Fernando CORREA, Respondent,

v.

WAYMOUTH FARMS, INC., and
St. Paul Mercury Insurance
Co., Relators.

No. C9–02–1172.

Supreme Court of Minnesota.

July 3, 2003.

Barbara L. Heck, Candlin & Heck, Bloomington, for Relators.

Michael G. Schultz, Sommerer & Schultz, P.A., Minneapolis, for Respondent.

Steven T. Scharfenberg, Lynn, Scharfenberg & Associates, Minneapolis, for Amicus Curiae, Insurance Federation of America.

Charles M. Cochrane, Cochrane Law Office, P.A., Roseville, for Amicus Curiae, Minnesota Trial Lawyers Association.

## OPINION

PAGE, Justice.

Waymouth Farms, Inc., and its workers' compensation insurer, St. Paul Mercury Insurance Company (collectively, Waymouth Farms), seek review of a decision of the Workers' Compensation Court of Appeals (WCCA) affirming an award of temporary total disability benefits to Fernando Correa (Correa). We affirm.

Born in Mexico, Correa came to the United States in 1987 with a passport and visa. Although Correa has lived and worked in the United States since 1987, he has never become a citizen nor obtained legal authorization to work in the United States. In November 1999, Waymouth

Farms, a producer and packager of meat products and gifts, hired Correa to work full-time in its warehouse as an order picker. Correa filled candy orders, which required him to lift boxes weighing up to 50 pounds.

On March 3, 2000, while performing his regular duties at Waymouth Farms, Correa bent down to lift a 30–pound box off of the floor and felt pain in his back. When he stood up, the pain dissipated so he continued to work. The next day, Saturday, the pain was so intense Correa had difficulty getting out of bed. When he returned to work on Monday, Correa reported the injury to his supervisor. Waymouth Farms accepted the injury as compensable under the Minnesota Workers' Compensation Act (Act), but initially did not pay any benefits because Correa continued to work. At the time of his injury, Correa was also employed at Schlotzsky's Restaurant (Schlotzsky's).

Correa received medical treatment for the pain in his lower back and left leg from Dr. Gomez at the Noran Neurological Clinic. When the pain continued to increase, Dr. Gomez referred Correa to a neurosurgeon. On July 20, 2000, Correa underwent microdiscectomy surgery at L–4 and 5. Waymouth Farms paid Correa wage loss benefits, covered his medical expenses arising from the surgery, and provided rehabilitation services, including the services of a qualified rehabilitation consultant (QRC).

After the surgery, Correa received follow-up treatment from Dr. Gomez, underwent physical therapy, and completed a work-hardening program. Upon completion of the work-hardening program, Dr. Gomez authorized Correa to return to work on a restricted basis. Dr. Gomez limited Correa to a maximum of four-hour shifts and instructed him to frequently change positions and avoid bending. On

December 19, 2000, Correa returned to work part-time at Waymouth Farms. As a result of the restrictions, Correa was unable to resume his position as an order picker and Waymouth Farms provided him with light-duty work. Correa also attempted to return to work at Schlotzsky's, but Schlotzsky's refused to allow him to return until he was released to work without medical restrictions.

On February 7, 2001, Waymouth Farms notified Correa that the Immigration and Naturalization Service had discovered: (1) the alien registration number Correa provided did not exist; (2) the social security number provided by Correa did not match his name; and (3) there was no alien registration number that corresponded to Correa's name and birth date. Waymouth Farms suspended Correa and gave him 48 hours to provide valid documentation of his eligibility to work in the United States. On February 9, 2001, Correa notified Waymouth Farms that he could not provide the requested documentation. Waymouth Farms then terminated Correa's employment effective February 7, 2001.

After his termination, Correa, although still subject to medical restrictions, commenced a job search. He conducted the job search on his own without the assistance of the QRC. Because of his restrictions, he was only able to conduct the job search for two to three hours per day. Correa testified that as a result of his job search he located several potential jobs, including one with a former employer, but was not offered employment due to his back injury and resulting work restrictions.

While conducting the job search, Correa continued to receive follow-up care and physical therapy, but the pain in his back and left leg increased. On March 6, 2001, Correa sought a second surgical opinion from Dr. Sunny Kim. Dr. Kim recom-

mended that Correa undergo a L4–5 repeat decompression and a two-level fusion and remain off work until after the surgery. As a result, Correa suspended his job search. On April 4, 2001, Correa filed a medical request seeking approval for the surgery recommended by Dr. Kim.

On February 21, 2001, shortly after terminating Correa, Waymouth Farms filed a notice of intention to discontinue Correa's temporary total disability benefits on the ground that he was medically released to work but could not, as an unauthorized alien, legally work in the United States. Pursuant to Minn.Stat. § 176.239 (2002), Correa objected to the discontinuance and requested an administrative conference. Correa also filed a claim petition for temporary total disability benefits. Following an administrative conference held on April 16, 2001, Waymouth Farms' request to discontinue benefits was denied by interim administrative decision.

In May 2001, Waymouth Farms filed a petition to discontinue compensation benefits. Waymouth Farms asserted that Correa's benefits should be discontinued for the following reasons: (1) the surgery requested was not reasonable, necessary, or related to the work injury; (2) Correa was capable of working; and (3) Correa's immigration status prevented him from gaining lawful employment and conducting a diligent job search. At the hearing on the parties' consolidated claims held on August 22, 2001, Correa testified that after entering the United States in 1987 he had worked continuously at various physical-labor positions, often working two jobs at once.

In denying the petition to discontinue, the compensation judge found that Correa's job search was both reasonable and diligent under the circumstances. In addi-

tion, the compensation judge also granted Correa's medical request and rejected Waymouth Farms' claim that Correa's wage loss was due to his status as an unauthorized alien.[1] Correa's medical request was also granted. On appeal to the WCCA, the sole issue raised by Waymouth Farms was whether Correa is entitled to temporary total disability benefits for the period from February 7 to March 6, 2001. Waymouth Farms argued that Correa was not entitled to receive benefits for that period because he was not legally able to work in the United States and, therefore, as a matter of law, was unable to perform a reasonable and diligent job search as required by Minn.Stat. § 176.101, subd. 1(g) (2002). The WCCA concluded that Correa's unauthorized status did not, as a matter of law, prevent him from conducting a reasonable and diligent job search and affirmed the compensation judge. *Correa v. Waymouth Farms, Inc.*, 2002 WL 1732107 (Minn. WCCA June 21, 2002).

Waymouth Farms asks us to review on certiorari whether the Immigration Reform Control Act (IRCA), or the policy behind it, prevents unauthorized aliens from conducting a diligent job search.

The determination of whether the IRCA, or the policy behind it, prevents an unauthorized alien from conducting a diligent job search under the Minnesota Workers' Compensation Act is a question of law. We are free to exercise our independent judgment when reviewing questions of law determined by the WCCA. *Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 735 (Minn.2000). In our determination, we are guided by the statutory mandate that "[q]uestions of law * * * shall be determined on an even-handed basis in accordance with the principles laid down in

---

1. An unauthorized alien is one who is neither lawfully admitted for permanent residence nor authorized by law to work. 8 U.S.C. § 1324a(h)(3) (2000).

section 176.001." Minn.Stat. § 176.021, subd. 1a (2002). "[T]he workers' compensation laws are not remedial in any sense and are not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand." Minn.Stat. § 176.001 (2002).

■■■ The purpose of the Minnesota Workers' Compensation Act (Act) is to provide "a measure of security to workers injured on the job, with the burden of that expense considered a proportionate part of the expense of production." *Le v. Kurt Mfg.*, 557 N.W.2d 202, 204 (Minn.1996) (quoting *Franke v. Fabcon, Inc.*, 509 N.W.2d 373, 376 (Minn.1993)). A fundamental component of the Act is the wage loss benefit, of which temporary total disability compensation is a significant part. The compensation for an injury producing temporary total disability "is 66–2/3 percent of the weekly wage at the time of injury." Minn.Stat. § 176.101, subd. 1 (2002). However, "[t]emporary total disability compensation shall cease if the total disability ends and the employee fails to diligently search for appropriate work within the employee's physical restrictions." Minn.Stat. § 176.101, subd. 1(g). "The concept of temporary total disability is primarily dependent upon the employee's ability to find and hold a job, not his physical condition." *Schulte v. C.H. Peterson Constr. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 134 (1967). The failure to search for work goes to the weight of the assertion that the employee is totally disabled. *Redgate v. Sroga's Standard Serv.*, 421 N.W.2d 729, 733 (Minn.1988) (quoting *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 188–89 (Minn.1978)); *Henry v. Sears, Roebuck & Co.*, 286 N.W.2d 720, 723 (Minn.1979). "[T]otal disability is not solely based on an inability to perform work, but may also be based on an inability to find work an injured employee is capable of performing." *Redgate*, 421 N.W.2d at 732. An injured employee who is capable of some work "must make a diligent job search to establish total disability." *Id.* at 733.

■■■ Waymouth Farms asserts that Correa, as an unauthorized alien, cannot make a diligent search for work because he cannot be lawfully employed. In 1986, Congress enacted the IRCA, "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147, 122 S.Ct. 1275, 152 L.Ed.2d 271. The IRCA made it illegal to knowingly employ unauthorized aliens. 8 U.S.C. § 1324a(a)(1) & (2) (2000). In so doing, the IRCA " 'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.' " *Hoffman*, 535 U.S. at 147, 122 S.Ct. 1275 (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194, and n. 8, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991)). The goal of the IRCA was "to reduce the incentives for employers to hire illegal aliens." *NLRB v. A.P.R.A. Fuel Oil Buyers Group, Inc.*, 134 F.3d 50, 55 (2d Cir.1997).

The IRCA requires employers to check certain documentation of citizenship or immigration status for all employees. 8 U.S.C. § 1324a(b)(1)(A) (2000). Employers who knowingly employ unauthorized aliens are subject to civil and criminal sanctions. *See* 8 U.S.C. §§ 1324a(e)(4), 1324a(e)(5), and 1324a(f) (2000). The IRCA also makes it unlawful for any person to subvert the verification system by tendering fraudulent documentation. 8 U.S.C. § 1324c(a) (2000).

■■■ Between February 7 and March 6, 2001, Correa was medically released to work with restrictions; thus, he was re-

quired to conduct a diligent job search as a condition of receiving temporary total disability benefits. Waymouth Farms concedes that unauthorized aliens are generally entitled to workers' compensation benefits. But it argues that because the IRCA prohibits unauthorized aliens from legally working in the United States, as a matter of law, Correa cannot conduct a diligent job search and therefore is not entitled to temporary total disability benefits.

 As written, the IRCA does not prohibit unauthorized aliens from receiving state workers' compensation benefits generally or temporary total disability benefits conditioned on a diligent job search specifically. The focus of the IRCA is on preventing employers from hiring unauthorized aliens. Aside from the prohibition on tendering fraudulent documents, the IRCA does not prohibit unauthorized aliens from seeking or accepting employment in the United States. *See Champion Auto Body v. Indus. Claim Appeals Office of the State of Colo.*, 950 P.2d 671, 673 (Colo.Ct.App.1997); Maria L. Ontiveros, *To Help Those Most in Need: Undocumented Workers' Rights and Remedies Under Title VII*, 20 N.Y.U. Rev. L. & Soc. Change 607, 612 (1994); Linda S. Bosniak, *Exclusion and Membership: The Dual Identity of the Undocumented Worker Under United States Law*, 1988 Wis. L.Rev. 955, 979 n. 90. The IRCA is not aimed at impairing existing state labor protections.[2] For example, all employees, including unauthorized aliens, are protected by the provisions of the National Labor Relations Act (NLRA) and Fair Labor Standards Act (FLSA). *See, e.g., Hoffman*, 535 U.S. at 152, 122 S.Ct. 1275 (noting that unauthorized aliens are entitled to "traditional remedies" under the NLRA); *Flores v. Amigon*, 233 F.Supp.2d 462, 463 (E.D.N.Y. 2002) (stating that numerous courts "have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA"). Thus, we conclude that the IRCA was not intended to preclude the authority of states to award workers' compensation benefits to unauthorized aliens.

Turning to the language of the Act, Minn.Stat. § 176.021, subd. 1 (2002), provides "all employers and employees are subject to the provisions of this chapter." "Employee" is defined as "any person who performs services for another for hire including * * * an alien." Minn.Stat. § 176.011, subd. 9 (2002). Here, the clear language of the Act does not distinguish between authorized and unauthorized aliens. Following our rules of statutory construction, when the words of a law are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursing its spirit. Minn.Stat. § 645.16 (2002). Had the legislature intended to exclude unauthorized aliens from coverage under the Act, it could easily have done so, as it did with certain types of farm workers who are explicitly excluded from the definition of "employee," but it did not. *See* Minn.Stat. § 176.011, subd. 9a (2002). Applying the Act as it is written, "aliens," whether authorized or unauthorized, are employees and thus are subject to the Act's provisions.[3]

---

**2.** The IRCA does not "undermine or diminish in any way labor protections in existing law" or "limit the powers of federal or state labor relations boards * * * to remedy unfair practices committed against undocumented employees." H.R.Rep. No. 99–682(I), 99th Cong. 2nd Sess. 45, 58, 1986 U.S.Code Cong. & Admin.News 5649, 5662.

**3.** In *Gonzalez v. Midwest Staffing Group, Inc.*, 59 Minn. Workers' Comp. Dec. 207 (WCCA), *aff'd without opinion*, 598 N.W.2d 657 (Minn.

Further, the statutory provision governing temporary total disability does not exclude unauthorized aliens from receiving temporary total disability benefits conditioned on a diligent job search. Minn.Stat. § 176.101, subd. 1(g). Therefore, we conclude that the words of the Act, when given their plain meaning, permit unauthorized aliens to receive temporary total disability benefits conditioned on a diligent job search.

■ Entitlement to temporary total disability compensation is conditioned on the establishment of a causal link between the work-related disability and the inability to find and hold a job, such as through evidence of a diligent work search. *Redgate*, 421 N.W.2d at 733. In *Redgate*, we defined "diligent job search" as "a search that is reasonable under all the facts and circumstances." *Id.* at 734. In addition, we concluded that to be persuasive of the fact that no job the employee is capable of doing is available, a diligent job search "must ordinarily be more than perfunctory." *Id. Redgate* requires a consideration of "all the facts and circumstances" when determining whether the employee has conducted a diligent job search. Immigration status is only one of the many facts and circumstances to be considered.

Although the Act permits unauthorized aliens to recover temporary total disability benefits conditioned on a diligent job search and the IRCA does not explicitly prohibit the state from awarding such benefits, Waymouth Farms argues that this court should adopt the United States Supreme Court's reasoning from *Hoffman* and conclude that the federal immigration policy articulated in the IRCA prohibits such an award. In *Hoffman*, a 5–4 decision, the majority concluded that the fed-

eral immigration policy underlying the IRCA precludes an award of backpay to an unauthorized alien who was unlawfully discharged by his employer for participating in union activity in violation of the National Labor Relations Act. *Hoffman*, 535 U.S. at 140, 122 S.Ct. 1275. In support of its conclusion, the majority noted that under the IRCA it is impossible for an unauthorized alien to obtain employment "without some party directly contravening explicit congressional policies." *Id.* at 148, 122 S.Ct. 1275. For an unauthorized alien to gain employment, "[e]ither the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations." *Id.*

As a further justification for denying unauthorized aliens backpay, the majority observed that unauthorized aliens cannot mitigate damages by searching for new work "without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers." *Id.* at 150–51, 122 S.Ct. 1275. Therefore, the majority concluded that the award of backpay to an unauthorized alien contradicts the policy expressed in the IRCA and "would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Id.* at 151, 122 S.Ct. 1275. The Court, therefore, held that the backpay award was beyond the remedial discretion of the National Labor Relations Board (Board). *Id.* at 151–52, 122 S.Ct. 1275.

1999), the WCCA decided that unauthorized aliens who sustain work-related injuries are

eligible for workers' compensation benefits.

In contrast, the *Hoffman* dissent argued that the Board's award of backpay did not "run[ ] counter to, or trench[ ] upon, national immigration policy." *Hoffman*, 535 U.S. at 153, 122 S.Ct. 1275 (Breyer, J., dissenting) (internal quotations omitted). The dissent characterized the IRCA's employment prohibition as an effort to "diminish the attractive force of employment, which like a 'magnet' pulls illegal immigrants toward the United States." *Id.* at 155, 122 S.Ct. 1275. The dissent stated that permitting the Board to award backpay to unauthorized aliens would not encourage unauthorized aliens to immigrate illegally because such an award is too speculative a future possibility. *Id.* Further, the dissent noted that denying the Board power to award backpay "might very well increase the strength of this magnetic force" because the denial of backpay would lower the employer's cost of an initial labor law violation and thereby increase the employer's incentive to hire undocumented workers. *Id.* Even if the employer does not knowingly hire unauthorized aliens, the dissent concluded that the majority's rule "offers employers immunity in borderline cases, thereby encouraging them to take risks, *i.e.*, to hire with a wink and a nod those potentially unlawful aliens whose unlawful employment (given the Court's views) ultimately will lower the costs of labor law violations." *Id.* at 156, 122 S.Ct. 1275.

Because the IRCA does not preclude payment of temporary total disability benefits and the language of our Act is clear, we do not have occasion to consider the policy question Waymouth Farms urges us to address.[4] Therefore, we conclude that unauthorized aliens are entitled to receive temporary total disability benefits conditioned on a diligent job search. While we decline to address the policy questions raised by Waymouth Farms, if policy considerations favor a different result, that determination is more properly left to the legislature to make.

Affirmed.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion and would reverse the decision of the WCCA. The majority's holding ignores important federal immigration requirements by creating a legal fiction of a diligent job search that is contrary to federal law. The IRCA explicitly prohibits the employment of unauthorized aliens. 8 U.S.C. § 1324a(a)(1) (2000) (providing that it is unlawful to knowingly hire an unauthorized alien); 8 U.S.C. § 1324a(a)(2) (2000) (declaring that it is unlawful for an employer to knowingly continue to employ an unauthorized alien). Accordingly, contrary to the majority opinion and the WCCA's conclusion, an unauthorized alien is incapable of conducting a diligent job search to receive temporary total disability benefits as required by Minn.Stat. § 176.101, subd. 1(g) (2002). *Johnson v. State Dept. of Veterans Affairs*, 400 N.W.2d 729, 731 (Minn.1987) (stating that an employee who fails to conduct a diligent search may be denied disability compensation).

Such a job search would violate federal law. There are criminal penalties for unauthorized aliens who use fraudulent documents to satisfy the requirements of the IRCA. 8 U.S.C. § 1324c(e) (2000). It is illegal for an employer to knowingly hire an unauthorized alien or knowingly employ

---

4. We do, however, note that to the extent that denying unauthorized aliens benefits predicated on a diligent job search gives employers incentive to hire unauthorized aliens in expectation of lowering their workers' compensation costs, the purposes underlying the IRCA are not served.

an unauthorized alien. 8 U.S.C. § 1324a(a)(1) and (a)(2). A job search that can never result in legal employment fails to satisfy the Minnesota Workers' Compensation Act's diligent job search requirement. The majority opinion uses a circular argument and ignores some of the circumstances of immigration status that make it legally impossible for Correa to conduct a diligent job search. The Act conditions further temporary total disability payments on such a search and that condition has not been met in fact or in law.

Moreover, the policy considerations articulated in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), are applicable here. As the United States Supreme Court recognized, Correa cannot conduct a diligent job search "without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers." *Id.* at 150–51, 122 S.Ct. 1275. In addition, awarding Correa continuing temporary total disability benefits predicated on a diligent job search would reward him for remaining in the United States illegally and encourage him to violate the IRCA by finding further employment. This result "trivializes" the immigrations laws. *Id.* at 150, 122 S.Ct. 1275. In support of its holding, the majority adopts the rationale of the dissent in *Hoffman*. However, the dissent did not carry the day in *Hoffman*. We should not disregard the law of the land as articulated by the *Hoffman* majority and elevate the dissent over the majority opinion to reach a desired result in this case.

Furthermore, awarding Correa these wage loss benefits would expose Waymouth Farms to higher workers' compensation liability, thereby penalizing Waymouth Farms for obeying federal law by terminating Correa. Finally, the majority's holding elevates the rights of unauthorized aliens over those of documented employees. Unauthorized aliens released to return to work are unable to accept jobs that documented workers with similar injuries would be required to accept.[1] Awarding unauthorized aliens continuing temporary disability benefits not conditioned on working or making a diligent job search not only violates the requirements of the Workers' Compensation Act, it also unjustly requires employers to pay benefits to unauthorized aliens that they would not have to pay to documented workers with similar injuries.

For the above reasons, I would hold as a matter of law that the unauthorized alien's illegal status prevents the alien from conducting a diligent job search because any job search would be based on fraud and deception as to immigration status. This court should not condone this legal fiction by interpreting the Act and the IRCA in isolation and awarding temporary total disability benefits in disregard of the common sense requirements of the Act. Congress and our legislature are better suited than our court to deal with this important but strictly policy issue.

---

**1.** Correa has received temporary total disability benefits and Waymouth Farms is not challenging Correa's entitlement to receive permanent partial disability benefits upon termination of his temporary total disability eligibility. The only benefits in issue are temporary benefits contingent on a reasonable job search after the respondent was released to work with restrictions.