2004 OK CIV APP 15

**CHEROKEE INDUSTRIES, INC. and CNA Insurance Company, Petitioners,**

v.

**Isac ALVAREZ and The Workers' Compensation Court, Respondents.**

**No. 99,173.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 23, 2003.

Certiorari Denied Jan. 20, 2004.

James Leo Gaston, Jr., McGivern, Gilliard & Curthoys, Oklahoma City, OK, for Petitioners.

E.W. Keller, Keller, Keller & Dalton, Oklahoma City, OK, for Respondent Isac Alvarez.

Opinion by KENNETH L. BUETTNER, Judge.

¶ 1 Isac Alvarez worked as a cleaner for Cherokee Industries, Inc. He first injured his back while working for Cherokee Industries September 6, 2001. He re-injured his back December 13, 2001 and March 20, 2002 in the course of his employment. He first filed his workers' compensation claim July 17, 2002 and re-filed September 3, 2002 to include the third injury. As the claim progressed, it was discovered that Alvarez was an unauthorized (falsely documented) alien worker. Cherokee Industries then argued that no benefits should be paid. The Workers' Compensation Court awarded Alvarez temporary total disability benefits and reserved the question of permanent disability. We sustain.

¶ 2 Petitioners first contend that Alvarez is an illegal alien who provided false documents to procure his employment in violation of the Immigration Reform and Control Act of 1986 and that therefore the employment contract was void *ab initio*, depriving Alvarez of entitlement to any benefits under the Workers' Compensation Act. They next argue that even if they are estopped from asserting their first contention as a defense, that Alvarez is not entitled to TTD benefits, citing *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). Finally, Petitioners complain that even if Alvarez is entitled to TTD benefits, the TTD period should have been terminated at an earlier date.

■ ¶ 3 With respect to the first allegation of error, the Oklahoma's Workers' Compensation Act does not exclude alien workers

from coverage. As stated in *Lang v. Landeros*, 1996 OK CIV APP 4, 918 P.2d 404, workers' compensation did not exist under common law so that the award of benefits is determined by statute. The Act has exceptions, for example, some sole proprietors, but it does not except illegal aliens or undocumented workers.[1] "This Court may not legislate exceptions or exclusions. This is a matter to be addressed by the Legislature." *Id.* at ¶ 5, p. 405.

¶ 4 Other states that have addressed this issue have likewise held that the mere status of illegal alien does not deprive an employee of *all* workers' compensation benefits. In *Correa v. Waymouth Farms, Inc.*, 664 N.W.2d 324 (Minn.2003), the Minnesota Supreme Court held that the Immigration Reform Control Act of 1986 (IRCA) did not preclude an illegal alien from receiving temporary total disability payments. IRCA describes an unauthorized alien as a person who is neither lawfully admitted to the United States for permanent residence nor authorized by law to work. 8 U.S.C. § 1324a(h)(3)(2000). Correa was injured while working for Waymouth Farms as a candy order picker. His employer covered his surgery expenses, wage loss benefits, and provided rehabilitation services. Correa was released to work, but with restrictions to light duty. Approximately one year after the injury, Waymouth Farms notified Correa that the Immigration and Naturalization Service had discovered that his alien registration number did not exist and his social security number was not a match. Correa was given forty-eight hours to provide valid documentation. He could not and his employment was terminated. Shortly thereafter, Waymouth Farms filed a notice of intention to discontinue Correa's temporary total disability benefits on the ground that he was medically released to work (restricted to light work) but could not, as an unauthorized alien, legally work in the United States. Pursuant to

---

1. 85 O.S. Supp.1997 § 3(6), in part: "Employee" means any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act, and shall include workers associating themselves together under an agreement for the performance of a particular piece of

work, in which event such persons so associating themselves together shall be deemed employees of the person having the work executed; ...

The 2001 amendments to this section resulted in this paragraph being renumbered to 85 O.S. 2001 § 3(8).

Minnesota law, TTD ceases if the total disability ends and the employee fails to diligently search for appropriate work within his physical restrictions [2]. M.S.A. § 176.101(g). The *Correa* Court stated, with respect to the argument of legal impairment, that IRCA does not prohibit unauthorized aliens from seeking or accepting jobs. It prohibits them from tendering fraudulent documents. The Minnesota Court also concluded that the Minnesota legislature could have, but did not, exclude aliens. "Applying the Act as it is written, 'aliens,' whether authorized or unauthorized, are employees and thus are subject to the Act's provisions." *Id.* at 330.[3]

¶ 5 Addressing a public policy argument for denying workers' compensation benefits to an unauthorized worker who was struck in the head by a steel beam, the Supreme Court of Pennsylvania, in *The Reinforced Earth Company v. Workers' Compensation Appeal Board (Astudillo)*, 570 Pa.464, 810 A.2d 99 (2002), held that "... the Act is the legislature's 'definitive pronouncement of the law governing remedies for work-related injuries....' " *Id.* at 105 ... "Thus, consistent with our long-held view, we will not, in the face of the Act, consider announcing public policy with respect to the receipt of workers' compensation benefits by unauthorized aliens. To do otherwise would be an exercise in judicial legislation, which we will not undertake." *Id.* In Pennsylvania, however, when an employer moves to suspend benefits, it carries the burden of showing several things, among them, job availability. Astudillo was medically determined to be able to work, but with restrictions of avoiding climbing ladders and scaffolding and lifting no more than twenty-five pounds. Reinforced Earth argued that Astudillo's disability was

not due to his work-related injury but to his inability to work lawfully. Under Pennsylvania law, the extent of an employee's disability is related both to capacity to work and availability of work. The Pennsylvania Court agreed that Astudillo's loss of earning power was caused by his immigration status, not his injury. Therefore, the lower tribunal erred in requiring Reinforced Earth to prove "job availability" in order to prevail on a suspension of benefits motion. It remanded the case for determination of suspension.

¶ 6 Nevada has taken the view that IRCA may foreclose certain benefits under its workers' compensation law. In *Tarango v. State Industrial Insurance System*, 117 Nev. 444, 25 P.3d 175 (2001), Tarango injured himself when he fell from a ladder while putting up drywall. He was released to work with restrictions. Because the restrictions precluded his former employment, his doctor recommended vocational rehabilitation. He was awarded permanent partial disability (PPD) benefits in June 1997. As part of his application for vocational rehabilitation benefits, Tarango was required to submit INS Form I-9, alien's proof of legal right to work in the U.S. Tarango failed to satisfy the requirement and the State Industrial Insurance System (SIIS) suspended his vocational rehabilitation benefits, but not his PPD. The Nevada Court agreed that the workers' compensation laws applied to all workers, regardless of immigration status. However, the purpose of rehabilitation benefits is to return the worker to the workplace. It held that by requiring rehabilitation benefits, SIIS would be forced to violate Nevada law which requires the insurer to return the worker to his former job; to a job with the same employer with accommodations; to em-

**2.** "The concept of temporary total disability is primarily dependent upon the employee's ability to find and hold a job, not his physical condition." *Schulte v. C.H. Peterson Constr. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 134 (1967). Oklahoma does not have a requirement that workers who have been medically released with restrictions diligently search for work while receiving TTD benefits. Rather, if a worker is released to light duty, the employer has the burden of providing light duty or if the employer has no appropriate work, then the employee may continue to receive TTD benefits. See 85 O.S. Ch.4, 2001, Workers' Compensation Rule 15;

*Hinton v. Labor Source*, 1998 OK CIV APP 2, 953 P.2d 358.

**3.** The Minnesota Court's decision is somewhat at odds with the U.S. Supreme Court in *Hoffman* which described IRCA as a "comprehensive scheme prohibiting the employment of illegal aliens in the United States." 535 U.S. at 147, 122 S.Ct. at 1282. Minnesota would require a diligent job search, which could only result in IRCA violations by either the searcher or the employer, in order to continue to receive TTD benefits.

ployment with a different employer using his existing skills; or provide training in another vocation. Because IRCA makes it illegal for an employer to employ an unauthorized worker, SIIS would be forcing the employer to violate federal law.

¶ 7 In Oklahoma, "[t]he purpose of temporary disability benefits is to replace wages lost during an employee's healing period." *B.E. & K. Construction v. Abbott,* 2002 OK 75, 59 P.3d 38, fn. 3. Disability must derive from injury which is defined at 85 O.S. Supp.1997 § 3(10)(a):

> "Injury" or "personal injury" means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Only injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out of the employment.

¶ 8 Our law provides that an employee is any person engaged in the employment of any person under an agreement for work. Being unauthorized does not change the fact that Alvarez was an employee at the time of his injuries.

¶ 9 Next, Petitioners argue that Alvarez is not entitled to TTD benefits pursuant to *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). In that case, the National Labor Relations Board had awarded back pay to a worker who was fired for supporting union organizing activities. At the administrative hearing for reinstatement and for determination of amount of back pay, the worker testified that he had never been legally admitted into nor authorized to work in the U.S. The United States Supreme Court found tension between IRCA and the NLRB:

> We therefore conclude that allowing the Board to award back pay to illegal aliens would unduly trench upon explicit statuto-

ry prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations. However broad the Board's discretion to fashion remedies when dealing only with the NLRA, it is not so unbounded as to authorize this sort of an award.

535 U.S. at 151, 122 S.Ct. at 1284–1285.

¶ 10 IRCA makes employers criminally liable for knowingly hiring an unauthorized alien, or continuing to employ the worker after the status is discovered. The unauthorized worker also faces criminal penalties if he tenders fraudulent documents to the employer. The Supreme Court held that while employer conduct with respect to illegal aliens was covered by the National Labor Relations Act, that benefits awarded by the NLRB may be circumscribed by IRCA.

¶ 11 We do not disagree with this approach, i.e., that illegal aliens are covered by the Workers' Compensation Act, but that certain benefits may not be available because of a claimant's illegal status. Cherokee Industries argues that allowing an illegal alien's claim, *at all,* would ignore and trivialize IRCA, and condone and encourage further criminal conduct by allowing a claimant to remain in the state and receive treatment and money as a result of his fraud. We do not believe allowing compensation for on the job injuries has such affect. Nor does the Workers' Compensation Court have the authority to determine Alvarez's ability to remain in this country. Some benefits, such as vocational rehabilitation or medical treatment by specific physicians may not be available to a claimant who cannot stay in this country.[4] However, Alvarez is covered by the Workers' Compensation Act.

¶ 12 Further, Cherokee Industries admitted that Alvarez was covered by its workers' compensation insurance policy. Pursuant to 85 O.S.2001 § 65.2, Employer is estopped

---

4. For example, 85 O.S. § 6 requires reinstatement of an employee discharged in violation of § 5 (an employee may not be discharged for the good faith filing a claim, hiring an attorney, instituting a proceeding, or testifying in a proceeding). This remedy would not be available for an illegal alien.

from denying that Alvarez was in its employ at the times of the industrial accidents.[5]

 ¶ 13 Finally, Cherokee Industries claims that if Alvarez is entitled to TTD, the period should have been terminated in April 2002, or November 2002, as stated by the Independent Medical Examiner, or July 3, 2002, the date that Alvarez gave notice of his unauthorized status, resulting in his "for cause" termination from employment. The Workers' Compensation Court found that Alvarez was temporarily totally disabled and was still TTD on the date of the order and that he should receive compensation during his period of disability not to exceed fifty-two weeks. "When this Court examines the compensation tribunal's factual resolutions, we apply the *any-competent-evidence standard.* Whenever conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law but rather of fact. The trial judge's non-jurisdictional findings may not be disturbed on review if supported by competent proof. It is only in the absence of competent evidence that a trial tribunal's decision may be viewed as erroneous as a matter of law and hence subject to appellate vacation." *Hughes v. Cole Grain Company,* 1998 OK 76, ¶ 6, 964 P.2d 206, 208. There is medical evidence from an examination in October 2002 which found Alvarez TTD. In a follow-up examination March 29, 2003, the doctor described continuing complaints and recommended surgery. There was competent medical evidence to support the trial court's order and we will not disturb the factual finding of TTD. Under the facts presented, the fact that Alvarez' employment was terminated by the employer does not impact the order. See *B.E. & K. Construction v. Abbott,* 2002 OK 75, 59 P.3d 38.[6]

¶ 14 The Order of the Workers' Compensation Court is SUSTAINED.

ADAMS, P.J., and JOPLIN, C.J., concur.

---

**5.** 85 O.S.2001 § 65.2: Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workmen's Compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workmen's Compensation Law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer in a hazardous employment subject to and covered by the Workmen's Compensation Law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of employment in which the employee was engaged at the time of such injury.

**6.** We need not address, in this case, whether an employee on light duty could be terminated because it was discovered he was an unauthorized alien. See *Akers v. Seaboard Farms,* 1998 OK CIV APP 169, 972 P.2d 885.