[No. B180839. Second Dist., Div. Four. Oct. 17, 2005.]

FARMER BROTHERS COFFEE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and RAFAEL RUIZ,
Respondents.

**COUNSEL**

Law Offices of Dennis J. Hershewe and Dennis J. Hershewe for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Law Offices of William W. Tiffany and G. Martin Jacobs for Respondent Rafael Ruiz.

Remcho, Johansen & Purcell, James C. Harrison, Margaret R. Prinzing and Kari Krogseng for California Applicant Attorney's Association as Amicus Curiae on behalf of Respondents.

**OPINION**

**HASTINGS, J.—**

## BACKGROUND

We issued a writ of review on April 4, 2005, with regard to two workers' compensation matters and consolidated them for argument and decision. Each petition contends that the Immigration Reform and Control Act of 1986 (IRCA), title 8 United States Code section 1101 et seq., preempts Labor Code section 1171.5, which provides that immigration status is irrelevant to the

issue of liability under state labor and employment laws, and Labor Code section 3351, which includes aliens in the definition of "employee," even those unlawfully employed.[1] In each case, it was undisputed that the employee was an alien, unauthorized to work in the United States at the time of the injury. We have subsequently severed the two matters, and now proceed only with the petition of Farmer Brothers Coffee.[2]

The bifurcated issue of Rafael Ruiz against his employer, Farmer Brothers Coffee, whether he was an employee within the context of the California workers' compensation scheme was submitted on documentary evidence and depositions, in addition to additional testimony from Ruiz and Andy Lee, the employer's warehouse and shipping manager. On November 5, 2004, the workers' compensation judge issued an opinion and the following finding: "Applicant is an employee per Labor Code Sections 3351 [subdivision] (a) and 3357."

Farmer Brothers then filed a petition for reconsideration by the Board on the grounds of federal preemption and its contention that Ruiz obtained employment and his expectation of benefits by means of fraud, in violation of Insurance Code section 1871.4. The Board rejected the contentions, and denied the petition for reconsideration on December 22, 2004.

The petition for review was timely filed in this court within 45 days of the Board's decision, and involves a "threshold issue" reviewable in the appellate court.[3]

## DISCUSSION

1.  *Federal Preemption*

Petitioner contends that sections 3351 and 1171.5 have been preempted by the employment provisions of the IRCA (8 U.S.C. § 1324a).

Section 3351, subdivision (a), defines "employee" as "every person in the service of an employer under any appointment or contract of hire or

---

[1] All further statutory references will be to the Labor Code, unless otherwise stated.

[2] See *Zurich Insurance Company v. Workers' Comp. Appeals Bd.* (Aug. 15, 2005, B179902). The parties in that case have settled, and we have severed and dismissed the writ of review. There, the employee, Alma Marroquin, obtained the proper work authorization from the federal government after the decision of the workers' compensation administrative law judge and prior to the decision on reconsideration by the Workers' Compensation Appeals Board (Board).

[3] (See § 5950; *Safeway Stores, Inc v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 533–534 [163 Cal.Rptr. 750].)

apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . ." including aliens. Section 1171.5 reads, in relevant part:

"The Legislature finds and declares the following:

"(a) All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

"(b) For purposes of enforcing state labor and employment laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that the inquiry is necessary in order to comply with federal immigration law.

"(c) The provisions of this section are declaratory of existing law. . . ."

■ Under the IRCA, it is unlawful to hire or continue to employ an alien the employer knows to be an "unauthorized alien," defined as one who is not lawfully admitted for permanent residence, or authorized to be so employed by federal immigration and nationality law or by the United States Attorney General. (8 U.S.C. § 1324a(a)(1)–(2), (h)(1).) The statute provides for graduated civil penalties for violations, and criminal penalties for employers who are found to have engaged in a pattern or practice of hiring unauthorized aliens in violation of the law. (8 U.S.C. § 1324a(e)(4)–(5), (f)(1).) It is also a crime to *knowingly accept a false immigration document for purposes of satisfying the requirements of the statute.* (8 U.S.C. § 1324c(a)(2); 18 U.S.C. § 1546(b).)

■ "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' Art. VI, cl. 2. Thus, . . . state law that conflicts with federal law is 'without effect.' [Citation.] Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' [Citation.]" (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608] (*Cipollone*).)

■ Examples of historic police powers include "[c]hild labor laws, minimum and other wage laws, laws affecting occupational health and safety,

and workmen's compensation laws . . . ." (*De Canas v. Bica* (1976) 424 U.S. 351, 356–357 [47 L.Ed.2d 43, 96 S.Ct. 933].) "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." (*Ibid.*) "Accordingly, ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis. [Citations.] [¶] Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' [Citation.] In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, [citation], or if federal law so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' [Citations.]" (*Cipollone, supra,* 505 U.S. at p. 516.)

There is no preemption language in the IRCA expressly affecting state workers' compensation laws. The only express preemption provision states: "The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." (8 U.S.C. § 1324a(h)(2).)

■ The purpose of the California Workers' Compensation Act is to furnish, expeditiously and inexpensively, treatment and compensation for persons suffering workplace injury, irrespective of the fault of any party, and to secure workplace safety. (Cal. Const., art. XIV, § 4; *Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 85 [58 Cal.Rptr.2d 190, 925 P.2d 1309].) It is remedial and humanitarian. (*Bartlett Hayward Co. v. Indus. Acc. Com.* (1928) 203 Cal. 522, 529 [265 P. 195].) Its benefits are not a penalty imposed upon the employer. (*State Dept. of Corrections v. Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 890–891 [97 Cal.Rptr. 786, 489 P.2d 818].) There is no provision in the Workers' Compensation Act imposing civil or criminal sanctions for the employment of illegal aliens. Thus, it does not conflict with the IRCA's express preemption provision.

As it stated in its report prior to the passage of the IRCA, the House Judiciary Committee discerned no intention in the statute "that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state . . . labor standards agencies . . . ." (H.R.Rep. No. 99-682(I), 2d Sess. (1986), reprinted in 1986 U.S. Code Cong. & Admin. News, p. 5662; see *Montero v. I.N.S.* (1997) 124 F.3d 381, 384.)[4]

---

[4] Although a committee report is not dispositive of congressional intent (see *Hoffman Plastic Compounds, Inc. v. NLRB* (2002) 535 U.S. 137, 149, fn. 4 [152 L.Ed.2d 271, 122 S.Ct. 1275] (*Hoffman*)), it may be helpful in discerning it. (See *id.* at pp. 155–157 (dis. opn. of Breyer, J.);

We conclude that preemption of state workers' compensation laws was not the " 'clear [or] manifest purpose of Congress.' [Citation.]" (*Cipollone, supra,* 505 U.S. at p. 516.) Thus, we must consider whether California's workers' compensation law actually conflicts with the IRCA, or whether the IRCA so thoroughly occupies the same field " ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' [Citations.]" (505 at p. 516.)

■ "Power to regulate immigration is unquestionably exclusively a federal power. [Citations.] . . . [But] standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration . . . ." (*De Canas v. Bica, supra,* 424 U.S. at pp. 354–355.) Since the IRCA does not provide for or prohibit compensation for injured workers, Congress has not occupied the field of workers' compensation. We therefore turn to the issue of actual conflict.

■ To imply preemption, there must be "such actual conflict between the two schemes of regulation that both cannot stand in the same area . . ." because the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' [citation]." (*Florida Avocado Growers v. Paul* (1963) 373 U.S. 132, 141 [10 L.Ed.2d 248, 83 S.Ct. 1210].)

■ California law has expressly declared immigration status irrelevant to the issue of liability to pay compensation to an injured employee. (§ 1171.5.) Were it otherwise, unscrupulous employers would be encouraged to hire aliens unauthorized to work in the United States, by taking the chance that the federal authorities would accept their claims of good faith reliance upon immigration and work authorization documents that appear to be genuine. Other jurisdictions have come to the same conclusion with regard to their workers' compensation laws. (See, e.g., *Dowling v. Slotnik* (1998) 244 Conn. 781, 791 [712 A.2d 396], cert. den., *Slotnik v. Considine* (1998) 525 U.S. 1017 [142 L.Ed.2d 451, 119 S.Ct. 542]; *Mendoza v. Monmouth Recycling Corp.* (N.J.Super. 1996) 672 A.2d 221, 224–225.)[5]

If compensation benefits were to depend upon an alien employee's federal work authorization, the Workers' Compensation Appeals Board would be

see also *Bank One Chicago, N. A. v. Midwest Bank & Trust Co.* (1996) 516 U.S. 264, 277–279, fn. 2 [133 L.Ed.2d 635, 116 S.Ct. 637] (conc. opn. of Stevens, J.).)

[5] Courts in Georgia, Florida, Minnesota, and Pennsylvania have also rejected preemption challenges to their state workers' compensation laws. (E.g., *Earth First Grading v. Gutierrez* (2004) 270 Ga.App. 328 [606 S.E.2d 332, 334–335]; *Safeharbor Employer Services I v. Velazquez* (Fla. Dist. Ct. App. 2003) 860 So.2d 984, 985–986; *Correa v. Waymouth Farms, Inc.* (Minn. 2003) 664 N.W.2d 324, 329 & fn. 2; *Reinforced Earth Co. v. W.C.A.B.* (2002) 570 Pa. 464 [810 A.2d 99, 103, fn. 5].)

thrust into the role of determining employers' compliance with the IRCA and whether such compliance was in good faith, as well as determining the immigration status of each injured employee, and whether any alien employees used false documents. Benefits would be denied to the undocumented injured employee for the sole reason that he is undocumented. Thus, the remedial purpose of workers' compensation would take on an enforcement purpose, in direct *conflict* with the IRCA. (See 8 U.S.C. § 1324a(h)(2).)

Petitioner contends that the United States Supreme Court's decision in *Hoffman, supra,* 535 U.S. 137, has placed the states in just such a position of enforcement. *Hoffman* held that the policies underlying the IRCA prohibited the National Labor Relations Board from awarding backpay as a remedy for unfair labor practices to illegal aliens. (535 U.S. at pp. 149–151.) Backpay in such a case would reward *unperformed* work in a job that could not lawfully have been obtained, and in essence, may provide the illegal alien a bonus due to his or her inability to mitigate damages by working in the United States. (*Ibid.*)

Section 1171.5 was enacted by the California Legislature in response to *Hoffman.* (See *Rivera v. NIBCO, Inc.* (9th Cir. 2004) 364 F.3d 1057, 1073.) The Legislature sought to avoid any conflict with the IRCA by providing that an employee's immigration status was irrelevant to his or her workers' compensation claim, as provided under existing law, except with regard to the issue of reinstatement, since the employer would be committing a federal crime by reinstating the undocumented employee. (See Sen. Com. on Labor and Industrial Relations, Rep. on Sen. Bill No. 1818 (2001–2002 Reg. Sess.) as amended May 14, 2002.)[6]

Section 1171.5, subdivision (b), avoids conflict with *Hoffman*'s backpay prohibition by making an exception to the exclusion of evidence of the employee's immigration status "where the person seeking to make this inquiry has shown by clear and convincing evidence that the inquiry is necessary in order to comply with federal immigration law," and by excluding any reinstatement remedy prohibited by federal law. Under existing law, backpay is not recoverable by an employee who would not be rehired regardless of any employer misconduct. (*Rivcom Corp. v. Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 773–774 [195 Cal.Rptr. 651, 670 P.2d 305].) Thus, where reinstatement is prohibited by federal law, section 1171.5 would also prohibit backpay, which was the intent of the Legislature in passing section 1171.5 and related statutes. (See Sen. Com. on Labor and Industrial Relations, Rep. on Sen. Bill No. 1818, *supra,* as amended May 14, 2002; Civ. Code, § 3339; Gov. Code, § 7285.)

---

[6] The report may be accessed through the Legislature's Web site at <http://www.leginfo.ca.gov> (as of Oct. 17, 2005).

■ We conclude that the Workers' Compensation Act, with the addition of section 1171.5 prohibiting reinstatement remedies to undocumented aliens, is not in conflict with the IRCA and comports with the reasoning of *Hoffman, supra*, 535 U.S. 137, since prohibited remedies necessarily include backpay.[7]

## 2. *Statutory Definition of "Employee"*

Petitioner contends that Ruiz does not come within the definition of "employee" set forth in section 3351, subdivision (a), as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, [including aliens]."

Petitioner suggests that by including the phrase *unlawfully employed*, the Legislature intended to exclude *illegal* employees from the definition. Petitioner contends that *unlawfully employed* must mean only that the *employer* is guilty of hiring the worker in violation of federal law. (See 8 U.S.C. § 1324a.) When it is the *employee* who has violated the law by using fraudulent documents, petitioner reasons, he or she cannot be considered as coming within the definition set forth in section 3351, subdivision (a).

Before hiring an employee, an employer is required to examine specified identification documents, and if applicable, immigration and work authorization documents, and to report under penalty of perjury on a federal form that it has verified that the individual is not an unauthorized alien. (8 U.S.C. § 1324a(b)(1)(A).) Employers may be subject to civil or criminal penalties for failures to comply in good faith, and employees may be subject to civil and criminal penalties for using false documents. (See 8 U.S.C. § 1324a(e)(4)–(5), (f)(1); *id.*, § 1324c(a)(1)–(3); 18 U.S.C. § 1546(b); *Hoffman, supra*, 535 U.S. at p. 148.)

■ There is no language in the statute to indicate that the Legislature intended "unlawfully employed" to have such a complex meaning or to incorporate federal immigration law, and our task in construing the statute is simply "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858.)

The sole authority cited by petitioner to support its questionable logic is a dissenting opinion in a Pennsylvania Supreme Court case, urging the court "to announce, as a matter of public policy consistent with federal immigration

---

[7] The sole issue presented here is whether Ruiz is an employee for purposes of the Workers' Compensation Act, and since reinstatement, backpay, or any related issue has not been raised here or below, there is no occasion to consider it.

law, that unauthorized aliens are not eligible for workers' compensation benefits [because] [o]ne who obtains employment in a manner contrary to federal law should not benefit from that illegal employment relationship." (*Reinforced Earth Co. v. W.C.A.B., supra,* 810 A.2d at pp. 111–112 (dis. opn. of Newman, J.), fn. omitted.)[8] The majority refused to do so, leaving that task to the Pennsylvania Legislature. (See *id.* at p. 105.)

■ In California, as in Pennsylvania, the Legislature establishes public policy. (*Forman v. Chicago Title Ins. Co.* (1995) 32 Cal.App.4th 998, 1020 [38 Cal.Rptr.2d 790].) Once it has done so, the courts may not simply fashion a policy more to their liking. (*Ibid.*; Cal. Const., art. III, § 3.) We therefore decline petitioner's suggestion that we insert such a policy into the statute.

In any event, assuming for discussion that the California Legislature meant "unlawfully employed" to refer only to the employer's violation of its reporting obligations under title 8 United States Code section 1324a(b)(1)(A), petitioner has failed to point out evidence that it did or did not comply with its federal reporting obligations, and our review has revealed none. Since petitioner did not dispute Ruiz's claim that he performed work at its request, it was petitioner's burden to prove that Ruiz was not an employee for purposes of the Workers' Compensation Act. (See § 3357; *Schaller v. Industrial Acc. Com.* (1938) 11 Cal.2d 46, 51 [77 P.2d 836].) Since petitioner did not prove otherwise, we assume that it did not comply with federal requirements, and therefore, petitioner's own definition of "unlawfully employed" has been met.

3. *Insurance Code Section 1871.4*

■ Petitioner contends that Ruiz's use of a fraudulent Social Security card and fraudulent green card to obtain employment, and then putting a false Social Security number on his workers' compensation claim form, violated Insurance Code, section 1871.4, which makes it a criminal offense to make a knowingly false or fraudulent material representation for the purpose of obtaining workers' compensation benefits.[9]

■ A claimant *who has been convicted* of a violation of Insurance Code section 1871.4 is barred from receiving or retaining any compensation

---

[8] Petitioner credits Justice Eakin with this opinion. It was, however, Justice Newman who authored the opinion, in which Justice Eakin joined. (*Reinforced Earth Co. v. W.C.A.B., supra,* 810 A.2d at p. 109.)

[9] Petitioner has attached as an exhibit to its petition a copy of a newspaper article that was not before the Board, and petitioner discusses the article without asking that we take judicial notice of it or explaining its relevance. We disregard the article and petitioner's discussion of it.

obtained as a *direct result* of the fraudulent misrepresentation. (*Tensfeldt v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 116, 123–124 [77 Cal.Rptr.2d 691]; Ins. Code, § 1871.5.) There is no evidence of a conviction in this record. Further, Ruiz was not required to be a lawfully documented alien to be an employee entitled to workers' compensation benefits. (See §§ 3351, 3357.) It was employment, not the compensable injury, that Ruiz obtained as a direct result of the use of fraudulent documents.

## DISPOSITION

The Board's order denying reconsideration is affirmed.

Epstein, P. J., and Curry, J., concurred.