NESCO, Appellant,

v.

Jacklyn HADDIX; Honorable Joseph Justice, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Jacklyn Haddix, Cross–Appellant

v.

Nesco; Honorable Joseph W. Justice, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.

Nos. 2010–SC–000216–WC, 2010–SC–000247–WC.

Supreme Court of Kentucky.

May 19, 2011.

---

6. CR 1(2). *See also Board of Adjustments of the City of Richmond v. Flood,* 581 S.W.2d 1, 2 (Ky.1978).

7. 860 S.W.2d at 769.

Hugh Brettelle Stonecipher, Tighe A. Estes, Ferreri & Fogle, Lexington, KY, Counsel for Appellant/Cross–Appellee, Nesco.

Daniel Edward Moriarty, Lexington, KY, Counsel for Appellee/Cross–Appellant, Jacklyn Haddix.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) found that the claimant's work for the defendant-employer's temporary employment agency was sporadic but failed to specify whether KRS 342.140(1)(d) or (1)(e) was used to calculate her average weekly wage. The Workers' Compensation Board reversed and remanded the claim for further proceedings to include the taking of additional proof and an analysis of the evidence under KRS 342.140(1)(e). This appeal and cross-appeal are taken from a decision by the Court of Appeals to affirm.

Appealing, the employer argues that which subsection of KRS 342.140(1) applies is a factual determination to be made by the ALJ; that the ALJ committed harmless error by failing to specify the subsection of KRS 342.140(1) used in the average weekly wage calculation; and that additional proof should not be permitted on remand. The claimant defends the Court of Appeals' decision but also argues in a cross-appeal that the record compels a finding under KRS 342.140(1)(e) that her average weekly wage was $320.00.

■ We affirm in part and reverse in part. Whether KRS 342.140(1)(d) or (1)(e) controls the facts as found is a legal question. The ALJ did not commit harmless error by failing to specify the subsection relied upon and must analyze the evidence under KRS 342.140(1)(e) on remand. We reverse with respect to the decision to reopen proof because the claimant has argued from the outset that KRS 342.140(1)(e) controls the calculation. The record contains adequate evidence to apply the statute under the present circumstances and does not compel the finding that either party seeks.

The claimant was born in 1960. She completed high school, after which she worked for various employers and government programs as a food service worker, nurse's aide, day care worker, and assembly line worker. Much of the work was temporary. In 2005 she began working for Nesco, a staffing service. Nesco placed her with several different businesses at which she performed various types of work for various periods of time. The employment was not continuous. Nesco placed her on "availability call" between assignments and called her near the end of an assignment to inform her if another placement was available. Sometimes she declined available jobs.

Nesco placed the claimant at Star Manufacturing on April 24, 2007. She worked there for about four weeks. Nesco then placed her at another business briefly. She declined Nesco's next placement offer. On August 6, 2007 Nesco sent her back to Star to perform the same work that she had done previously. Two days later, on August 8, 2007, she slipped in some oil, fell, and injured her neck. Nesco placed her on light duty for a while but eventually terminated her, after which she sought workers' compensation benefits. She testified that she was the only employee Star requested in August 2007 and later characterized the position as being "temp-to-hire," which meant that Star would hire

her as its permanent employee when a position became available.

Julie Gammon, an area manager for Nesco, testified at the hearing that the company placed individuals in jobs under various types of arrangements such as temp-to-hire, temporary services, direct placements, and temporary work. She stated that sometimes Nesco hires an individual directly; whereas, sometimes it finds a worker for a business in exchange for 20% of the base salary and the business takes the worker onto its payroll. She explained that individuals sent to a business on a temp-to-hire basis have the potential to be hired by the business if they meet its standards and a position is available. She stated that she would have to check company records to determine whether any position in which the claimant worked was temp-to-hire. Gammon testified that Nesco did not pay workers when they were on availability call between job placements and did not consider them to be employees at such times.

Amy Ward, a staffing specialist at Nesco, testified at the hearing that the claimant's position at Star was temporary rather than temp-to-hire. She stated that all of the positions that Nesco filled for Star were temporary; that Star had never hired an employee whom Nesco referred; and that Star did not ask for a replacement employee after the claimant's injury. She testified that the position the claimant held at Star paid $8.00 per hour for a forty-hour week and that it was temporary, i.e., for as long as Star needed her.

Kelly Rogers, the Nesco employee who recruited workers for Star, testified that Star offered temporary jobs but no temp-to-hire jobs. She stated that the jobs were of indefinite duration but that Star expressed no intent to put a temporary employee on its payroll. To her knowledge no employee she placed at Star was ever hired.

Nesco submitted the claimant's wage records for 2006 and 2007. They indicated that she worked continuously from January 1, 2006 through May 20, 2006 for between 8 and 48.25 hours per week. The claimant testified that she worked for another temporary employment agency for a while in October 2006. She did not work for Nesco again until the week ending April 27, 2007, when she was sent to Star for the first time. Nesco's records indicated that she worked 20 hours that week; 36 hours during the week ending May 4, 2007; and 40 hours during the week ending May 11, 2007, for a total of $768.00 or a weekly average of $59.08. In the 13–week period immediately preceding her injury she worked 13 hours during the week ending May 18, 2007; 15.3 hours during the week ending June 15, 2007; and 24 hours during the week ending August 10, 2007, for a total of $587.40 or a weekly average of $45.18.

The claimant maintained that she worked at Star in a temp-to-hire job of indefinite duration. She had done so for only three days when injured. Thus, her average weekly wage should be calculated using KRS 342.140(1)(e) because she had been employed for less than 13 weeks when the injury occurred. The calculation she proposed yielded an average weekly wage of $320.00 based on working 40 hours per week at $8.00 per hour. She offered no alternative calculation.

Nesco asserted that most of the claimant's work history consisted of sporadic temporary employment. Moreover, although she worked for Nesco for more than 13 weeks before the injury, the character of her work included periods when she did not work and received no wages. It advocated calculating her average weekly wage by averaging her earnings during

the 13–week period immediately preceding her injury under KRS 342.140(1)(d), which yielded an average weekly wage of $45.18. Though based on KRS 342.140(1)(d), the argument overlooked the fact that the claimant's earnings during the most favorable 13–week period in the year before her injury yielded an average weekly wage of $59.08.

Nesco argued in the alternative that the calculation should be made under KRS 342.140(1)(e) as in *C & D Bulldozing v. Brock*,[1] taking into consideration the sporadic and temporary nature of the employment. Nesco noted that the claimant offered no evidence concerning the earnings of similarly-situated employees but also asserted that there was no similarly-situated employee. It concluded that $45.18, the average of her earnings over the 13–week period immediately preceding her injury, was a more realistic figure than the average of her earnings during the weeks that she worked.

Uncontradicted medical evidence indicated that the claimant's injury produced a 17% permanent impairment rating, and the ALJ found that she did not retain the physical capacity to return to lifting boxes of parts that weighed 50 pounds. The ALJ found the claimant's work placement with Nesco to be "very sporadic" as reflected in her wage records. Noting that the prior period of employment at Star only lasted for about four weeks, the ALJ found it unrealistic to treat the subsequent job at Star as being permanent for the purpose of the average weekly wage calculation. Accepting Nesco's position but failing to specify whether under KRS 342.140(1)(d) or (1)(e), the ALJ found the claimant's average weekly wage to be $45.18 per week but acknowledged that she would receive very little compensation for what was a very serious injury.

The claimant's petition for reconsideration pointed out that she had worked for Nesco for only three days when injured; that her average weekly wage must be determined under KRS 342.140(1)(e); and that the statute did not consider whether the employment was permanent. She asserted that $320.00 per week was a more realistic estimation of what she would have earned had she been employed by Nesco for the full 13–week period immediately preceding her injury when work was available to other employees in the same occupation. The petition was denied, after which she appealed.

## I. ISSUE OF FACT OR LAW.

■ The employer asserts that the Court of Appeals erred by directing the ALJ to apply KRS 342.140(1)(e) on remand because whether to apply KRS 342.140(1)(d) or (1)(e) is a choice "dependent on findings of fact that are solely the province of the ALJ." We agree that factual findings are the ALJ's province, but we do not agree that the Court of Appeals erred when it concluded that KRS 342.140(1)(e) governs these facts.

KRS 342.140(1) provides, in pertinent part, as follows:

The average weekly wage of the injured employee at the time of the injury or last injurious exposure shall be determined as follows:

(1) If at the time of the injury which resulted in death or disability or the last date of injurious exposure preceding death or disability from an occupational disease:

. . . .

(d) The wages were fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the

1. 820 S.W.2d 482 (Ky.1991).

wage most favorable to the employee computed by dividing by thirteen (13) the wages (not including overtime or premium pay) of said employee earned in the employ of the employer in the first, second, third, or fourth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the injury.

(e) The employee had been in the employ of the employer less than thirteen (13) calendar weeks immediately preceding the injury, his average weekly wage shall be computed under paragraph (d), taking the wages (not including overtime or premium pay) for that purpose to be the amount he would have earned had he been so employed by the employer the full thirteen (13) calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation.

Although KRS 342.285 designates the ALJ as the finder of fact in workers' compensation claims, it charges the Board with determining whether the legal conclusions the ALJ draws from the facts conform to Chapter 342. KRS 342.290 charges the Court of Appeals with reviewing all matters subject to review by the Board as well as any legal errors that arise before the Board. The Board and the Court of Appeals acted within the scope of their authority when they determined that the claimant's average weekly wage must be calculated under KRS 342.140(1)(e) as construed in *C & D Bulldozing v. Brock* because Nesco had employed her for less than 13 weeks when her injury occurred.

KRS 342.140(1)(d) clearly requires the employee to have worked for the employer for at least one 13–week period when injured. KRS 342.140(1)(e) clearly does not. The court determined in *C & D Bulldozing*

*v. Brock* that KRS 342.140(1)(e) must be used to calculate the earning capacity of an employee who worked when work was available; received no wages when work was unavailable; agreed with his employer that he was not employed during those periods; and worked only seven weeks out of the 13 weeks immediately preceding his injury. As calculated under that section, the average weekly wage is based on evidence of what would have been earned if the worker was employed by the employer for the full 13–week period immediately preceding the injury and worked whenever work was available to other employees in a similar occupation.

Applying KRS 342.140(1)(e) to the facts, the court noted the absence of any evidence that work was available at C & D to other employees in an occupation similar to Brock's. Moreover, evidence showed seven weeks of operating a bulldozer for C & D during a 13–week period to be a normal period of service. The court determined that the calculation must be based on Brock's actual earnings during the 13–week period immediately preceding his injury and acknowledged that the calculation yielded the same average weekly wage as under KRS 342.140(1)(d) on the facts that were present. Noting that no provision of KRS 342.140 was tailored narrowly to accommodate consistently intermittent employment that is not seasonal, the court concluded that KRS 342.140(1)(e) must be applied "as best we can" to the circumstances.[2]

The ALJ found reasonably in the present case that the claimant's employment with Nesco was sporadic. The uncontradicted testimony of Nesco's own witness, Julie Gammon, belied its argument that KRS 342.140(1)(d) controls these facts. She stated that Nesco did not pay workers

---

2. 820 S.W.2d at 486.

on availability call between assignments and nothing indicates that it provided any other benefits during such periods. Such evidence compelled a conclusion that each placement was a separate employment. KRS 342.140(1)(e) controls the average weekly wage calculation as a matter of law because the claimant's injury occurred three days after Nesco re-employed her and placed her at Star. Thus, she had been employed for less than 13 weeks when injured.

■ KRS 342.140(1)(e) permits an ALJ to estimate what the worker would reasonably have expected to earn in the occupation in which the injury occurred by taking into account the availability of work to other employees in a similar occupation during the full 13–week period immediately preceding the injury. *Huff v. Smith Trucking*[3] and *C & D Bulldozing Co. v. Brock*[4] stand for the principle that the ALJ must consider the unique circumstances in a case involving an employment of less than 13 weeks and make a realistic estimate of what the individual probably would have earned in a normal 13–week period of employment.

## II. HARMLESS ERROR.

■ The claimant asserted that she would have been able to work at Star for the full 13–week period that immediately preceded her injury and earned an average wage of $320.00 per week, a position the ALJ rejected as being "unrealistic." Although the ALJ accepted Nesco's position as to the correct manner in which to calculate the average weekly wage, nothing indicates that the ALJ adopted Nesco's average weekly wage analysis under KRS 342.140(1)(e) rather than KRS 342.140(1)(d). The claim must be remanded for further consideration because the evidence would have supported but did not compel an average weekly wage of $45.18 when analyzed properly under KRS 342.140(1)(e).

Unlike KRS 342.140(1)(d), which bases the average weekly wage calculation on the most favorable 13–week period in the year immediately preceding the worker's injury, KRS 342.140(1)(e) bases the analysis for an employment of less than 13 weeks on the 13–week period that ends with the injury.

KRS 342.140(1)(e) does not on its face consider that the parties may have had a longstanding but sporadic employment relationship. It looks to the earnings of other employees in a similar occupation in an attempt to estimate the average weekly wage for a normal 13–week period of hire. As the court noted in *C & D Bulldozing v. Brock*, KRS 342.140(1)(e) is not ideally suited to consistently intermittent employment and must be applied to varying circumstances.

■ Unique to the present case are two facts. First, unlike the parties in *C & D Bulldozing v. Brock* or in *Huff v. Smith Trucking*, Nesco and the claimant had a sporadic employment relationship of nearly two years' duration. Second, Nesco sometimes offered work that the claimant declined. A realistic estimate of her probable earnings in a normal 13–week period must take both facts into account. Thus, the calculation under KRS 342.140(1)(e) may be based on reasonable inferences drawn from the course of the parties' relationship as well as evidence of what similarly-situated employees would have earned.

## III. ADDITIONAL PROOF.

■ We are not convinced that the circumstances warrant the taking of addition-

**3.** 6 S.W.3d 819 (Ky.1999).

**4.** 820 S.W.2d 482.

al proof. An injured worker bears the burden of proof and risk of non-persuasion before the fact-finder with regard to every element of a claim, including her average weekly wage.[5] This is not a case in which the claimant was uncertain about which section of KRS 342.140(1) applied to her claim. She argued from the outset that KRS 342.140(1)(e) governed the calculation and had the burden to submit the necessary evidence within the time for taking proof.

The claimant relied on KRS 342.140(1)(e) and *Huff v. Smith Trucking* to argue that she would have been able to work at Star for the 13 weeks immediately preceding her injury, earning an average weekly wage of $320.00. She offered no alternative argument. To permit additional proof under the circumstances would amount to giving her a "second bite at the apple." That said, we are convinced that the record contains sufficient evidence to permit a proper analysis under KRS 342.140(1)(e) but are not convinced that it compels the ALJ to adopt the analysis that either party offered.

The decision of the Court of Appeals is affirmed in part, reversed in part, and this claim is remanded to the ALJ to analyze the evidence under KRS 342.140(1)(e) and decide the matter accordingly.

All sitting. All concur.

---

5. *See Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice,* 576 S.W.2d 276 (Ky.App.1979).