**ABEL VERDON CONSTRUCTION and Acuity Insurance, Appellants,**

v.

**Miguel A. RIVERA; Honorable Otto Daniel Wolff, Administrative Law Judge; Workers' Compensation Board; and Cabinet for Health and Family Services, Appellees.**

No. 2010–SC–000744–WC.

Supreme Court of Kentucky.

Aug. 25, 2011.

As Corrected Aug. 30, 2011.

Michael Schulte, Michael J. Schulte, PLLC, Ft. Mitchell, KY, for Appellants, Abel Verdon Construction and Acuity Insurance.

Robert L. Catlett, Jr., Louisville, KY, for Appellee, Miguel A. Rivera.

Timothy J. Salansky, Cabinet for Health and Family Services, Frankfort, KY, for Appellee, Cabinet for Health and Family Services.

## OPINION OF THE COURT

The Workers' Compensation Board affirmed findings that supported the claimant's partial disability award against his employer, Abel Verdon Construction, but remanded the claim with directions for the Administrative Law Judge (ALJ) to admit the testimony from the claimant's safety expert and to determine whether Verdon's intentional violation of a workplace safety regulation in any degree caused the claimant's accident.[1] A divided Court of Appeals reinstated the ALJ's refusal to admit the safety expert's testimony but affirmed otherwise. The court also rejected Verdon's argument that Chapter 342 violates federal immigration law by authorizing workers' compensation benefits without regard to the legality of the recipient's immigration status. Verdon appeals.

Verdon argues that the Court of Appeals erred because the Immigration Reform and Control Act of 1986 (IRCA)[2] preempts the application of Chapter 342 to this claim based on the claimant's status as an "unauthorized alien."[3] Verdon also argues that the Court of Appeals erred by affirming with respect to the existence of an employment relationship, the adequacy of proof concerning the claimant's average weekly wage, and the duration of TTD as well as the decision to remand for additional findings concerning a safety violation. We affirm for the reasons stated herein.

The claimant, a fifteen-year-old unauthorized alien, sought workers' compensation benefits from Verdon for injuries sustained on July 8, 2005, when he fell through a hole in the second floor of a home that Verdon was constructing. He landed in the basement, resulting in a severe head injury and other serious injuries. The claimant lapsed into a coma and was hospitalized for two months, after which he underwent physical, occupational, and speech therapy. He had returned to high school and was taking special education classes when his claim was heard, but he retained significant physical and mental impairments that were permanent. The Cabinet for Health and Family Services became a party because it paid the claimant's medical expenses after Verdon denied liability.

---

1. A finding that such a violation occurred would warrant a 30% increase in compensation under KRS 342.165(1).

2. 8 U.S.C. § 1324a *et seq.*

3. 8 U.S.C. § 1324a(h)(3) defines an "unauthorized alien" as an alien not lawfully admitted for permanent residence or authorized to be employed in the United States. In order to be "authorized," an alien must possess a valid social security card or other acceptable documentation of authorization for employment. 8 U.S.C. § 1234a(b)(C). The claimant acknowledged that he moved to the United States "illegally;" that he did not have a social security card; and that he had not applied for an alien registration card or an employment authorization document.

Having declined to address the constitutional issue,[4] the ALJ found the claimant to be Verdon's employee; found his average weekly wage to be $150.00; awarded TTD benefits from July 9, 2005 through December 20, 2006; and awarded triple permanent partial disability benefits based on a permanent impairment rating of 44%. The ALJ refused to certify Ralph Wirth as an expert concerning Verdon's alleged safety violation; rejected his testimony; and concluded that no violation was applicable. Although the Court of Appeals determined subsequently that the Board erred by reversing the finding that Wirth was not an expert, the court determined that KRS 342.165(1) did not require expert testimony; found that the Board did not err by remanding for additional consideration under the statute; and affirmed in all other respects.

## I. KRS 342.640.

KRS 342.640 provides workers' compensation coverage to "employees," without regard to the legality of the employment relationship. It states, in pertinent part as follows:

The following shall constitute employees subject to the provisions of this chapter, except as exempted under KRS 342.650: (1) Every person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer;

. . .

(4) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury; and . . . .

No exemption listed in KRS 342.650 applies to this claim. The parties do not dispute that the claimant is an unauthorized alien and that Chapter 342 covers him without regard to the legality of his status as an employee. Mindful that courts avoid a constitutional question unless the merits of an appeal require an answer,[5] we turn first to the finding that he was an employee.

## A. EMPLOYMENT RELATIONSHIP.

Verdon continues to assert that the claimant failed to meet his burden of proving that they had an employment relationship. We disagree.

Testifying through an interpreter, the claimant admitted that he never spoke to Abel Verdon. He testified that a distant cousin, Margarito Villa Martinez, hired him as a part-time helper to pick up trash at Verdon's construction site for $50.00 per day during the summer break from school. An individual named Abelardo picked him up for work and told him what to do. The claimant stated that Martinez paid him and the other workers in cash and that he earned $250.00 during the two-week period before his accident occurred.

Martinez, the foreman of Verdon's framing crew, testified through the use of an interpreter in November 2006. When asked whether the claimant was an employee of Verdon Construction, he responded, "Not really." He explained that the claimant worked part time during vacation and that there no intention for him to work full time because he was a teenager. The claimant was paid around $7.00 to $8.00 per hour and worked about eight hours per day for two or three days per

---

**4.** *See Blue Diamond Coal Co. v. Cornett*, 300 Ky. 647, 189 S.W.2d 963 (1945).

**5.** *Baker v. Fletcher*, 204 S.W.3d 589 (Ky. 2006); *Dawson v. Birenbaum*, 968 S.W.2d 663, 666 (Ky.1998), *citing Preston v. Clements*, 313 Ky. 479, 232 S.W.2d 85, 88 (1950).

week. Martinez stated that he did not tell Verdon that he hired the claimant because his duties included hiring workers and paying them. He stated that he told Verdon how much money he needed to pay the workers, then Verdon gave him cash and he distributed it to them.

When deposed again in March 2008, Martinez testified that the claimant picked up garbage and scrap materials at the construction site and sometimes carried supplies and tools to the carpenters. The work was necessary and would have been performed by Martinez or the carpenters had the claimant not been hired. His hourly rate was lower than the carpenters' and made it more economical to use him for the work.

Verdon's brief to the ALJ denied the existence of an employment relationship with the claimant. Noting that they had never met or spoken, Verdon claimed to have had no knowledge of the claimant's presence at the worksite. Verdon denied paying him for any services performed, pointing to the absence of any documentation to that effect as well as to the evidence that Martinez was the claimant's cousin, paid him in cash, and stated that he was not really an employee.

The ALJ analyzed the evidence of an employment relationship emphasizing the four primary *Ratliff v. Redmon*[6] factors as set forth in *Chambers v. Wooten's IGA Foodliner*.[7] The ALJ determined that an employment relationship existed based on findings that the claimant's work as a site maintenance person was within the scope of Verdon's business constructing homes; that Verdon controlled the work being performed; and that the work did not require any particular skill. Noting that the three objective factors favored an employment relationship and that objective factors should prevail when the intent of the parties could not be ascertained, the ALJ determined that the claimant was Verdon's employee.

KRS 342.285 designates the ALJ as the finder of fact in workers' compensation cases. It permits an appeal to the Board but provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and, together with KRS 342.290, prohibits the Board or a reviewing court from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact."

 KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence.[8] As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of

---

6. 396 S.W.2d 320 (Ky.1965). The nine *Ratliff* factors include: 1.) the extent of control that the alleged employer may exercise over the details of the work; 2.) whether the worker is engaged in a distinct occupation or business; 3.) whether the type of work is usually done in that locality under the supervision of an employer or by a specialist, without supervision; 4.) the degree of skill required by the work; 5.) whether the worker or alleged employer supplies the instrumentalities, tools, and place of work; 6.)the length of the employment; 7.) the method of payment, whether by the time or the job; 8.) whether the work is a part of the regular business of the employer; and 9.) the intent of the parties. *Ratliff* emphasized that the workers' compensation approach to analyzing the parties' relationship was broader and more liberal than the approach found in the law of master and servant or principal and agent.

7. 436 S.W.2d 265, 266 (Ky.1969). The primary factors included: 1.) the nature of the work as related to the business generally carried on by the alleged employer; 2.) the extent of control exercised by the alleged employer; 3.) the professional skill of the alleged employee; and 4.) the true intentions of the parties.

8. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985).

whether it comes from the same witness or the same party's total proof.[9] KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;"[10] whether the decision "was procured by fraud;"[11] or whether the decision was erroneous as a matter of law.[12] Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

■ A party who appeals a finding that favors the party with the burden of proof must show that no substantial evidence supported the finding, *i.e.*, that the finding was unreasonable under the evidence.[13] Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal.[14]

■ The finding that an employment relationship existed between the claimant and Verdon was properly affirmed. It was reasonable and supported by substantial evidence.

### B. PREEMPTION.

■ Having affirmed the existence of an employment relationship, we turn to the constitutional issue. Federal legislation preempts a state law if it contains an explicit preemption clause; if it implies Congressional intent to occupy the field; or if it conflicts with a state law.[15] The IRCA expressly preempts states from imposing civil or criminal sanctions on those who employ unauthorized aliens other than through licensing or similar laws.[16] Verdon concedes that the IRCA's preemption clause does not refer to state workers' compensation benefits. He asserts that it preempts the application of Chapter 342 to the claim of an unauthorized alien implicitly. We disagree.

Verdon relies on *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*,[17] which concerned an employer's liability for back pay to an employee who was terminated in violation of the NLRA from an employment that was obtained illegally, by violating the IRCA. Noting that the employee was never lawfully entitled to be employed in the United States, the Supreme Court determined that the IRCA's policy of combating the employment of unauthorized aliens by criminalizing the use of fraudulent documents to subvert the Act's employer verification system preempted the NLRB's authority to award backpay based on a wrongful termination of employment.[18] The court determined that to al-

---

**9.** *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky.1977).

**10.** KRS 342.285(2)(a).

**11.** KRS 342.285(2)(b).

**12.** KRS 342.285(2)(c), (d), and (e). *See also American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450, 457 (Ky.1964).

**13.** *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986); *Mosely v. Ford Motor Co.*, 968 S.W.2d 675 (Ky.App.1998); *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky.App.1985).

**14.** *McCloud v. Beth–Elkhorn Corp.*, 514 S.W.2d 46 (Ky.1974).

**15.** *English v. General Electric Co.*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). *See also Chamber of Commerce of the United States of America v. Whiting*, —— U.S. ——, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011) (citing *C.S.X. Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

**16.** 8 U.S.C. § 1324a(h)(2).

**17.** 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002).

**18.** Nothing indicated that the employer knew the documents verifying employability were false.

low backpay to an unauthorized alien would "unduly trench upon explicit statutory prohibitions critical to federal immigration policy .... encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." [19]

■ *Hoffman* does not support the conclusion that Verdon seeks. A federal law preempts a state law implicitly when it is impossible to comply with both of them or when the state law creates an obstacle to accomplishing federal objectives.[20] Unlike the statute at issue in *Hoffman*, Chapter 342 does not conflict with the objectives of the IRCA, which are to deter employers from hiring unauthorized aliens and to deter aliens from entering the United States illegally in order to obtain employment.[21] Nor does Chapter 342 permit an unauthorized alien to be compensated due to the termination of an employment that itself is illegal.

The General Assembly enacted Chapter 342 under the state's police power, based on the community interest in regulating workplace safety and in requiring employers rather than the community to provide financial support for employees injured in work-related accidents as well as for their dependents.[22] Employers bear liability under Chapter 342 as a cost of production, without regard to fault or the legality of the employment.

Federal and state courts that have considered the matter have concluded that the IRCA does not preempt a workers' compensation law that covers unauthorized aliens.[23] We do not view eligibility for workers' compensation benefits as being a realistic incentive for an individual to enter the United States unlawfully.[24] Moreover, we view a decision to exclude unauthorized aliens from the application of Chapter 342 as contravening the purpose of the IRCA by providing a financial incentive for unscrupulous employers to hire unauthorized workers and engage in unsafe practices, leaving the burden of caring for injured

---

19. 535 U.S. at 151, 122 S.Ct. 1275.

20. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000).

21. *See* H.R.Rep. No. 99–682 [I], 99th Cong.2d Sess. at 46, reprinted in 1986 U.S.S.C.A.N. at 5650. *See also* H.R.Rep. No. 99–682 [I], 99th Cong.2d Sess. at 58, reprinted in 1986 U.S.S.C.A.N. at 5662 ("not the intention of [the IRCA] to undermine or diminish in any way labor protections in existing law").

22. *Workmen's Compensation Board of Kentucky v. Abbott*, 212 Ky. 123, 278 S.W. 533 (1925).

23. *See Bollinger Shipyards, Inc. v. Director, Office of Worker's Compensation Programs*, 604 F.3d 864 (5th Cir.2010) (benefits to unauthorized alien under Longshore and Harbor Workers' Compensation Act do not undermine the IRCA's policies). *See also Asylum Co. v. District of Columbia Department of Employment Services*, 10 A.3d 619 (D.C.2010); *Amoah v. Mallah Management, LLC*, 57 A.D.3d 29, 866 N.Y.S.2d 797, 800 (N.Y.App. Div.2008); *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 154 P.3d 1080 (2007); *Economy Packing Company v. Illinois Workers' Compensation Commission*, 387 Ill.App.3d 283, 327 Ill.Dec. 182, 901 N.E.2d 915 (2008); *Design Kitchen and Baths v. Lagos*, 388 Md. 718, 882 A.2d 817 (2005); *Farmers Brothers Coffee v. Workers' Compensation Appeals Board*, 133 Cal.App.4th 533, 35 Cal.Rptr.3d 23 (Cal.App. 2 Dist.2005); *Dowling v. Slotnik*, 244 Conn. 781, 712 A.2d 396 (1998); *Continental PET Technologies, Inc. v. Palacias*, 269 Ga.App. 561, 604 S.E.2d 627 (2004); *Correa v. Waymouth Farms, Inc.*, 664 N.W.2d 324 (Minn.2003); *Safeharbor Employer Services I, Inc. v. Cinto Velazquez*, 860 So.2d 984 (Fla. Dist.Ct.App.2003); *Ruiz v. Belk Masonry Co., Inc.*, 148 N.C.App. 675, 559 S.E.2d 249 (2002).

24. *See Economy Packing*, 327 Ill.Dec. 182, 901 N.E.2d at 923.

workers and their dependents to the residents of the Commonwealth.[25]

## II. AVERAGE WEEKLY WAGE.

Verdon continues to assert that the claimant failed to meet his burden of proving an average weekly wage. We disagree.

The claimant testified that he worked for two weeks before he was injured and that he worked three days the first week and four days the second. He also testified that he was paid $50.00 per day and earned a total of $250.00. Martinez testified that the claimant was paid $7.00 to $8.00 per hour; performed necessary work; and received his wages in cash. He could not remember the exact number of days that the claimant worked but thought that he worked three days the first week and two days the second week. Verdon submitted no contrary evidence.

Noting the difficulty that a worker paid in cash encounters when attempting to prove his average weekly wage, the ALJ determined that the employer could not rely on the lack of written documentation as a defense. The ALJ found it difficult to apply KRS 342.140(1) under the circumstances but concluded that the claimant worked three days per week and earned $50.00 per day, which yielded an average weekly wage of $150.00.[26]

KRS 342.140(1)(e) controls the average weekly wage calculation in this case because the claimant worked for less than 13 weeks before his injury occurred. KRS 342.140(1) provides in pertinent part as follows:

(1) If at the time of the injury which resulted in death or disability or the last date of injurious exposure preceding death or disability from an occupational disease:

. . . .

(d) The wages were fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the employee computed by dividing by thirteen (13) the wages (not including overtime or premium pay) of said employee earned in the employ of the employer in the first, second, third, or fourth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the injury.

(e) The employee had been in the employ of the employer less than thirteen (13) calendar weeks immediately preceding the injury, his average weekly wage shall be computed under paragraph (d), taking the wages (not including overtime or premium pay) for that purpose to be the amount he would have earned had he been so employed by the employer the full thirteen (13) calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation.

---

25. *Id.* (preemption would relieve employers from providing coverage, creating an incentive to hire unauthorized aliens); *Design Kitchen*, 882 A.2d at 826 (preemption would enable unscrupulous employers to engage in unsafe practices, leaving the cost of caring for injured workers to society). The Court of Appeals noted in the present case that the IRCA contemplates a fine as low as $250.00 for hiring an unauthorized alien, which to some employers might seem to be a reasonable price to pay for avoiding safety requirements and liability for a serious injury such as the claimant's.

26. Although page 15 of the opinion listed average weekly wage figures of $100.00 and $121.45, the average weekly wage analysis appears on pages 16 and 17 and finds the figure to be $150.00. Orders entered pursuant to the parties' petitions for reconsideration correct the amount of the weekly TTD benefit and state that $150.00 is the correct average weekly wage.

■ Chapter 342 requires the findings of fact that support an award to be based upon substantial evidence. It does not require documentary proof of a worker's average weekly wage in a case where nothing refutes testimony by the worker and his foreman that the employer paid its employees in cash. As stated previously, KRS 342.285(1) permits an ALJ to pick and choose from the witnesses' testimony and to draw reasonable inferences from the evidence. The ALJ relied on the testimonies of the claimant arid Martinez to find an average weekly wage of $150.00. The Court of Appeals did not err by affirming the finding because it constituted a reasonable estimate of what the claimant probably would have earned had he worked for the full 13–week period immediately preceding his injury when work was available.[27]

### III. TTD.

The ALJ determined that Verdon's obligation to pay TTD benefits commenced on June 9, 2005, the day following the claimant's injury. Noting the absence of any proof of a specific date that the claimant reached maximum medical improvement (MMI), the ALJ relied on the earliest date that a physician assigned a permanent impairment rating. The ALJ determined as a consequence that TTD ended on December 20, 2006, when Dr. Sexton assigned a 44% permanent impairment rating.

Verdon complains that the claimant failed to meet his burden of proving the duration of TTD because neither Dr. Sexton's report nor any other medical evidence specifies that he reached MMI on December 20, 2006. We disagree.

KRS 342.0011(11)(a) permits TTD to be awarded during periods that an injured worker has not reached a level of improvement that would permit a return to employment and has not reached MMI. The courts have construed the provision to mean that a worker who is entitled to TTD must not have improved sufficiently to return to customary employment or have reached MMI.[28] KRS 342.0011(11)(b) and (c) base a finding of permanent partial or permanent total disability on the existence of a permanent disability rating, which KRS 342.0011(35) and (36) base on a permanent impairment rating assigned under the AMA *Guides to the Evaluation of Permanent Impairment.*

The ALJ's decision to award TTD benefits until the earliest date that a physician assigned a permanent impairment rating was reasonable under the evidence and properly affirmed on appeal. The Fifth Edition of the *Guides* indicates on page 2 that impairment is not considered to be permanent until the patient reaches MMI. Thus, the earliest date that a physician assigned a permanent impairment rating constitutes evidence that MMI occurred and TTD ended on or before that date. The ALJ did not err by terminating the claimant's TTD award on the date of the earliest permanent impairment rating because no evidence supported much less compelled a finding that MMI occurred earlier.

### IV. SAFETY VIOLATION.

Verdon complains that the Court of Appeals erred by affirming the Board's decision to remand for additional findings with respect to the alleged safety violation. Verdon bases its argument that the claimant "failed to present any credible proof that his injury occurred due to a failure to

**27.** *See Nesco v. Haddix,* 339 S.W.3d 465 (Ky. 2011); *Huff v. Smith Trucking,* 6 S.W.3d 819 (Ky.1999); *C & D Bulldozing Co. v. Brock,* 820 S.W.2d 482 (Ky.1991).

**28.** *Central Kentucky Steel v. Wise,* 19 S.W.3d 657 (Ky.2000); *Magellan Behavioral Health v. Helms,* 140 S.W.3d 579 (Ky.App.2004).

comply with a specific state or federal statute or regulation," on the ALJ's finding that the claimant's safety expert, Ralph Wirth, did not know sufficient facts to render an opinion concerning whether a safety violation occurred. Verdon asserts that by affirming the Board, the court "impliedly supports the Board's blatant attempt to substitute its opinion as to the quality and credibility" of the claimant's testimony and the inconsistent testimonies contained in Martinez's two depositions. We disagree.

The claimant alleged that Verdon violated a safety regulation by failing to protect him from falling through the hole in the floor. He submitted a report from Ralph Wirth, which included a copy of the Kentucky Occupational Safety and Health (Kentucky OSH) Program Instruction 01–2005 (February 16, 2005), including Appendix A. The document states that a failure to comply with the fall protection measures stated therein "shall be cited as a violation of 29 C.F.R. § 1925.501(b)(13)" as incorporated by 803 KAR 2:412. Wirth recommended in a report to the claimant's attorney that the Kentucky OSH office be contacted to determine that the regulation was current.

Wirth testified when deposed in October 2007 that his report referred to 29 C.F.R. § 1925.502(a)(2) but that 29 C.F.R. § 1925.501(b)(13) applies directly in this case because it pertains to residential construction fall protection. He stated that Instruction 01–2005 became effective on February 16, 2005, a few months before the claimant's July 2005 accident. He also stated that he had checked with Mark Hughes, a safety supervisor with Kentucky OSH, since preparing his report and determined that the regulation remained unchanged at present except that the height requirement was increased from six feet to ten feet in 2006.

The ALJ refused to certify Wirth as an expert concerning the alleged violation and rejected his testimony, convinced that he "did not know sufficient facts or law" to render an expert opinion. The ALJ then determined without further analysis that no violation applied to the claim. This appeal does not concern the Court of Appeals' decision to uphold the refusal to consider Wirth's testimony. At issue is whether the Court of Appeals acted properly by affirming the decision to remand the claim to analyze the remaining evidence under KRS 342.165(1) and to determine whether the claimant's accident resulted in any degree from Verdon's safety violation.

The record contained evidence that Kentucky OSH regulations pertaining to residential construction imposed certain requirements concerning fall protection at the time of the claimant's injury. An ALJ is presumed to know the law with respect to safety violations and is charged with applying it properly to the facts as found.[29] KRS 342.165(1) does not require expert testimony to prove that the employer's violation of a known safety regulation helped to cause the accident in which its employee was injured. Employers are presumed to know what specific state and federal statutes and regulations govern their workplace; thus, an employer's violation of such a provision implies the intent to do so.[30]

We find no error in the decision to remand this claim for further consideration

**29.** *See Burton v. Foster Wheeler, Corp.,* 72 S.W.3d 925 (Ky.2002) (ALJ must analyze evidence of alleged safety violation despite worker's failure to cite regulation violated; applicable legal authority is not evidence).

**30.** *Chaney v. Dags Branch Coal Co.,* 244 S.W.3d 95, 96–97 (Ky.2008).

of the alleged safety violation. The record indicates that nothing covered or barricaded the opening through which the claimant fell. Having failed to do so previously, the ALJ must analyze the evidence to determine what regulation governed the facts; whether the regulation required the employer to have some form of fall protection in place at the time of the claimant's accident; and, if so, whether the failure to have such protection helped to cause the claimant's accident.

The decision of the Court of Appeals is affirmed.

All sitting. All concur. SCOTT, J., concurs by separate opinion with respect to KRS 342.640(1).

SCOTT, J., concurring:

I concur with the majority because KRS 342.640(1) defines an employee as "[e]very person, including a minor, whether lawfully or unlawfully employed...." Thus, any contrary result is a legislative matter, not a judicial one.