RENDERED: SEPTEMBER 26, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2019-SC-000053-WC

DATE 10/22/19 JAF

JAMES A. WILKERSON                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2018-CA-000561
V.             WORKERS' COMPENSATION BOARD
NO. 12-WC-85251

KIMBALL INTERNATIONAL, INC;             APPELLEES
DR. DAVID P. ROUBEN;
HON. GRANT S. ROARK, ADMINISTRATIVE
LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## OPINION OF THE COURT BY JUSTICE KELLER

## AFFIRMING

This matter arose after the appellant, James A. Wilkerson, sustained a back injury while working for the appellee, Kimball International, Inc. ("Kimball"). Wilkerson filed a claim with the Department of Workers' Claims, and a hearing was held on his claim. The Administrative Law Judge ("ALJ") awarded Wilkerson temporary total disability, permanent partial disability, and medical benefits for a back strain he sustained while working for Kimball. The ALJ denied benefits for a knee injury and two back surgeries, finding they were not causally related to his employment, and therefore not compensable.

Wilkerson appealed the denial of benefits. The Workers' Compensation Board ("Board") affirmed the ALJ, and the Court of Appeals affirmed the Board. We, likewise, affirm the Court of Appeals.

## I. BACKGROUND

Wilkerson was employed by Kimball on April 4, 2012 when he sustained an alleged work-related back injury. He was lifting a large bookcase when he felt a pop in his low back and experienced a burning sensation in his leg. He immediately reported the injury to Kimball.

Wilkerson was first treated by Dr. Robert Byrd on April 16, 2012. He reported injuring himself while lifting ten days prior. His chief complaint was "low back pain" that radiated into his left leg. Dr. Byrd diagnosed Wilkerson with a "Lumbar Spasm," ordered conservative treatment including physical therapy, and indicated that he could return to work on April 19, 2012. On April 26, 2012, Wilkerson returned to Dr. Byrd's office still complaining of "low back pain" that radiated into his left leg. Dr. Byrd diagnosed him with acute low back pain and eventually ordered an MRI. Wilkerson did not report left knee pain to Dr. Byrd.

On May 29, 2012, Wilkerson underwent an MRI that revealed mild disc bulging at L3-4 and no evidence of nerve root compression. When this MRI was compared to a 2006 MRI of Wilkerson's back, no additional prominence in the disc bulge was noted. Wilkerson continued to see Dr. Byrd until July 2012, when Dr. Byrd referred him to Dr. Eric Goebel, a neurosurgeon.

2

On July 3, 2012, Wilkerson saw Dr. Goebel, complaining of lower back pain radiating into his left leg. He told Dr. Goebel that the pain began approximately three months earlier when he was lifting a cabinet and felt a "pop" in his back. Dr. Goebel assessed that Wilkerson had left lower extremity radicular symptoms, although the MRI revealed no evidence of a herniated disc or nerve root issue. Dr. Goebel noted that Wilkerson's "lower extremity symptoms are improving with physical therapy as well as some of the back pain." Dr. Goebel recommended that Wilkerson continue with physical therapy and remain off work for three additional weeks. Dr. Goebel indicated that there was no basis for back surgery for Wilkerson.

Wilkerson testified that he continued with physical therapy, and on July 12, 2012, while performing squats as part of his at-home physical therapy, he felt a "pop" in his left knee. He sought treatment at Owensboro Health Regional Hospital. To the hospital, Wilkerson reported that he sat down after performing his home exercises, and when he stood up from the couch he felt his knee pop and give way.

On July 18, 2012, Wilkerson sought treatment from Dr. Charles Milem, an orthopedic physician, for his knee. To Dr. Milem's office, Wilkerson reported that his left knee popped and gave out when "he was getting up from doing his home exercise program for his back off of the couch." An MRI was ordered.

On July 31, 2012, Wilkerson returned to Dr. Milem's office. During that visit, he reported that he injured his knee in April 2012 while carrying furniture. He also reported having "problems with his back" and described his

3

back pain as radiating into his calf and ankle. Based on the MRI of Wilkerson's knee, Dr. Milem diagnosed a medial meniscal tear and recommended knee surgery. Dr. Milem performed a partial medial meniscectomy on Wilkerson's left knee on August 16, 2012. Wilkerson continued to see Mr. Milem for follow-up care, where he continued to complain of worsening left knee pain and lumbar symptoms.

Wilkerson returned to work at Kimball on October 9, 2012 and continued working with no restrictions until March 20, 2015. He testified, however, that he continued to have low back pain throughout this period.

On January 22, 2013, Wilkerson sought treatment from Dr. Mladen Djurasovic for continued back pain. Dr. Djurasovic reviewed Wilkerson's prior MRI and found moderate degenerative spondylosis but no significant neural compressive lesions. He ordered an EMG study, which showed no evidence of lumbosacral radiculopathy or generalized peripheral neuropathy in either of Wilkerson's legs. He did not recommend surgery and referred Wilkerson to Dr. Louis Williams for a nonoperative treatment program. Wilkerson continued to be seen by Dr. Djurasovic through February of 2014 and continued to complain of low back pain.

On May 13, 2014, Wilkerson met with Dr. David Rouben and reported lower back pain and right lower extremity pain that had persisted since the April 2012 work incident. Wilkerson acknowledged to Dr. Rouben that his left knee pain pre-dated the work incident. Dr. Rouben diagnosed Wilkerson with disc disease of the L5-S1 segment. On March 25, 2015, Dr. Rouben performed

4

a decompression and fusion surgery. According to Wilkerson, this surgery only served to worsen his back pain.

On December 15, 2015, Wilkerson sought treatment from Dr. John Johnson. Dr. Johnson performed a revision of the fusion surgery on January 17, 2016. During his deposition, Dr. Johnson testified that Wilkerson had no indications for fusion surgery and that he would not have performed the surgery on Wilkerson. He testified that he could not say that Dr. Rouben's surgery was reasonable, necessary, or work-related. He attributed Wilkerson's lower back issues to a degenerative condition.

On or about April 4, 2014, Wilkerson filed a claim with the Department of Workers' Claims alleging that he suffered an injury to his lumbar spine and left leg while working for Kimball. He alleged he sustained these injuries on April 4, 2012.

On August 5, 2014, Wilkerson underwent an independent medical evaluation ("IME") with Dr. Thomas Loeb. Dr. Loeb diagnosed Wilkerson with a transient low back strain related to the work incident and noted a history of longstanding mild multilevel degenerative disc disease with no cord or nerve root compromise. He assigned Wilkerson a 5% impairment rating pursuant to the American Medical Association Guides to the Evaluation of Permanent Impairment, 5th edition ("AMA Guides") for his lower back. Dr. Loeb noted, however, that Wilkerson's April 4, 2012 lower back "strain or sprain would have not lasted more than 3-4 weeks. Any ongoing symptoms would be due to his long standing, preexisting, underlying multilevel degenerative disk disease,

5

which has been active off an[d] on for many years." Therefore, Dr. Loeb attributed the entirety of Wilkerson's impairment rating to his pre-existing condition. Dr. Loeb further opined that the surgery performed by Dr. Rouben was non-work-related, unreasonable, and unnecessary. He also found that Wilkerson's knee injury was unrelated to the April 4, 2012 work incident.

On December 9, 2015, Wilkerson underwent an IME performed by Dr. Robert Jacob. Dr. Jacob opined that the April 4, 2012 work incident caused only a low back strain with no permanent impairment. He further noted that Wilkerson had none of the normal indications for fusion surgery and concluded that the surgery performed by Dr. Rouben was unnecessary. He further concluded that Wilkerson's knee injury was from getting up off the couch and was not work-related.

On January 11, 2017, Dr. James Farage performed an IME of Wilkerson. Dr. Farage attributed both of the back surgeries and the knee injury to the April 4, 2012 work incident. Under the AMA Guides, Dr. Farage assigned a 32% impairment rating comprised of a 23% impairment rating for the lumbar condition and 20% for the left knee condition. He apportioned 10% of the knee impairment to pre-existing degenerative changes.

Wilkerson testified that he continues to experience symptoms of burning and numbness down his leg and into his toes. He indicated that he has not returned to work with Kimball since March 20, 2015. He further stated that he continues to take medications to relieve his pain.

As relevant to this appeal, the ALJ concluded that Wilkerson's left knee problems were not work-related. He further found that Wilkerson's two back surgeries were not causally related to the work incident that occurred on April 4, 2012. As such, he determined that Wilkerson's only compensable impairment came from his condition as it existed before Dr. Rouben's back surgery. He assigned Wilkerson a 5% impairment rating for the April 4, 2012 work injury and found that Wilkerson was entitled to the 2x multiplier in KRS[1] 342.730(1)(c)(2).[2] Finally, the ALJ awarded Wilkerson temporary total disability benefits for the initial period he was off work following the April 4, 2012 incident.

Wilkerson appealed to the Workers' Compensation Board which affirmed the ALJ. He then appealed to the Court of Appeals which affirmed the Board. He has now appealed to this Court as a matter of right. *See Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990); Ky. Const. § 115.

---

[1] Kentucky Revised Statutes

[2] KRS 342.730(1)(c)(2) provides:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

7

## II. STANDARD OF REVIEW

In a workers' compensation case, Wilkerson, as the claimant, has the burden of proving every element of his claim. *Gibbs v. Premier Scale Co./Ind. Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001). The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). On appellate review, the issue is whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999). "[T]he ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding." *Finley v. DBM Technologies*, 217 S.W.3d 261, 264 (Ky. App. 2007). Because the ALJ found against Wilkerson with respect to the issues in this appeal, and because he carried the burden of proof, Wilkerson must establish on appeal that the favorable evidence was so overwhelming as to compel a finding in his favor. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). "Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012) (citing *McCloud v. Beth–Elkhorn Corp.*, 514 S.W.2d 46 (Ky. 1974)).

## III.  ANALYSIS

Prior to reaching the merits of Wilkerson's claims to this Court, we must first address Kimball's assertion that Wilkerson's appeal should be dismissed based on his failure to file a petition for reconsideration with the ALJ. KRS 342.281 provides that

> any party may file a petition for reconsideration of the award, order, or decision of the administrative law judge. The petition for reconsideration shall clearly set out the errors relied upon with the reasons and argument for reconsideration of the pending award, order, or decision. . .. The administrative law judge shall be limited in the review to the correction of errors patently appearing upon the face of the award, order, or decision.

In arguing for dismissal, Kimball relies on KRS 342.285(1) which states:

> An award or order of the administrative law judge as provided in KRS 342.275, if petition for reconsideration is not filed as provided for in KRS 342.281, shall be conclusive and binding as to all questions of fact, but either party may in accordance with administrative regulations promulgated by the commissioner appeal to the Workers' Compensation Board for the review of the order or award.

Kimbell further relies on this Court's previous decision in *Eaton Axle Corp. v. Nally* to support his argument for dismissal. 688 S.W.2d 334 (Ky. 1985). In *Eaton Axle*, however, we merely stated that "no award, order or decision of the [ALJ] shall be reversed or remanded on appeal to any court because of failure of said [ALJ] to make findings of an essential fact unless said failure is brought to the attention of the [ALJ] by Petition for Rehearing pursuant to KRS 342.281." *Id.* at 338. This Court's concern was with the "multitude of cases annually [being] remanded...for Findings of Fact on issues essential to the Opinion and Order." *Id.* at 337. To address this concern, we held that "before

9

beginning the appellate process which utilizes the court system, the claimant, employer or any other party involved in the case...seeks an appeal on errors which are patent upon the face of the award, order or decision, he *must* first file a Petition for Reconsideration pursuant to KRS 342.281." *Id.* at 338.

While the plain language of KRS 342.285(1) refers only to an ALJ's findings of fact, KRS 342.285(2) sets forth the questions of law that a reviewing court may consider. As we explained in *Abel Verdon Construction v. Rivera,*

> KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

348 S.W.3d 749, 753-54 (Ky. 2011) (footnotes omitted). In reading KRS 342.285(1) with our statement in *Abel Verdon Construction,* this Court can still review whether the ALJ "rendered an arbitrary or capricious decision[] or committed an abuse of discretion" using the above defined standard of review. *Id.* The issues of whether substantial evidence supported the ALJ's findings and whether the evidence would compel a different result are questions of law that this Court can, and must, address.

Having determined that Wilkerson's appeal need not be dismissed, we must determine whether the evidence compelled a finding in favor of Wilkerson regarding the work-relatedness of his left knee condition and his lumbar surgeries. The ALJ was "not persuaded" that Wilkerson's left knee problems

10

were work-related. In reaching this conclusion, the ALJ noted that Wilkerson's initial treatment records for the first three months following his April 4, 2012 work incident did not mention a left knee injury or any left knee complaints. He further did not find Wilkerson's testimony that he injured his left knee while doing physical therapy exercises at home to be credible, as the initial history in the treatment records indicated that he hurt his knee when getting up off of the couch *after* performing his exercises. The ALJ's finding regarding Wilkerson's left knee injury was based primarily on his assessment of Wilkerson's credibility. Credibility is a matter for the ALJ to decide. *See Paramount Foods, Inc.*, 695 S.W.2d at 419. In this case, the ALJ found Wilkerson's testimony about the cause of his knee injury not to be credible. The ALJ's finding that Wilkerson's knee injury was not work-related and therefore not compensable was supported by substantial evidence, and the evidence of record, as detailed above, does not compel a different result.

Finally, we must determine whether the evidence compelled a finding in favor of Wilkerson regarding the causation of his two back surgeries. The ALJ found that the surgery performed by Dr. Rouben was not causally related to the lumbar strain he sustained in the April 4, 2012 work incident. The ALJ noted that all the other medical experts believed the surgery was not reasonable or necessary, and in fact, no other medical experts recommended surgery. He further noted that Wilkerson returned to work with no restrictions in October 2012 (after his knee surgery) and continued to work his regular job

11

at Kimball without restrictions until Dr. Rouben performed surgery in March 2015.

The ALJ next noted that Dr. Rouben's surgery only made Wilkerson's pain worse, which eventually necessitated Dr. Johnson's surgery. There was no dispute that Dr. Johnson's surgery was necessary to correct the surgery Dr. Rouben performed. Dr. Johnson, however, testified that he did not believe Dr. Rouben's surgery was reasonable or necessary and that he would not have performed it. The ALJ finally noted that Dr. Johnson's testimony indicated that Wilkerson's current back condition was due to his surgeries and not his work injury. The ALJ concluded that Wilkerson's back surgeries were not work-related and that his only compensable impairment came from his condition as it existed before Dr. Rouben's surgery. Having reviewed the record, this Court finds that the ALJ's conclusions regarding Wilkerson's back surgeries were supported by substantial evidence and that the evidence of record does not compel a different result.

## IV. CONCLUSION

For the foregoing reasons, the opinion of the Court of Appeals is affirmed. All sitting. All concur.

COUNSEL FOR APPELLANT:

Abram V. Conway II
Conway & Keown


COUNSEL FOR APPELLEE, KIMBALL INTERNATIONAL, INC.:

Judson Fuller Devlin
Fulton & Devlin, LLC


COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael W. Alvey
Workers' Compensation Board


COUNSEL FOR APPELLEE, HON. GRANT S. ROARK, ADMINISTRATIVE LAW JUDGE:

Honorable Grant Stewart Roark
Administrative Law Judge


COUNSEL FOR APPELLEE, DR. DAVID P. ROUBEN:

Dr. David P. Rouben
*Pro se*